## BROADBENT v. UNITED STATES.
### No. 3087.

Circuit Court of Appeals, Tenth Circuit.

May 9, 1945.

Claude T. Barnes, of Salt Lake City, Utah, for appellant.

John S. Boyden, Asst. U. S. Atty. of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant, Rula K. Broadbent, was indicted, tried and convicted in the United States District Court for the District of Utah, for corruptly endeavoring to influence a witness in the United States District Court and corruptly endeavoring to obstruct and impede the administration of justice therein, in violation of Section 135 of the Criminal Code, 18 U.S.C.A. § 241. She appeals from the conviction and sentence of thirty days, contending that the evidence is insufficient to support the verdict of the jury.

In support of the allegations in the indictment, the Government offered the testimony of various witnesses, which established the following facts: In March, 1944, a criminal indictment was returned against Follis Gardner Petty in the United States District Court of Utah, charging transportation of Mary Marguerite Ford in interstate commerce for immoral purposes, and on the 13th day of March, Mary Marguerite Ford was subpoenaed to appear as a witness for the Government. After the return of the indictment and the issuance of the subpoena, appellant, who had known the witness for a number of years, called at her home, stating that she came in behalf of Petty and he had sent $100 for the witness and her children; that he wanted to furnish her a home and $100 per month if the witness would "be on their side". She inquired if the witness had been subpoenaed and asked her to see Petty's attorneys as they were anxious to ascertain just what her testimony would be. She further stated that Petty had letters in his possession which if given publicity would be embarrassing to the witness. When on the next day appellant returned to the home of the witness she was informed that the witness had been subpoenaed, and she again stated what Petty would do for the witness and her children if she would "testify right" or "wouldn't testify for the Government". She again mentioned the letters in Petty's possession and stated that if the witness testified "her name would be smeared all over the papers". She advised the witness that when testifying "take your time and be careful what you say. Remember what it means to us and to the principles. If you don't want to answer, say you don't know. Be easy on us. Don't tell all the truth, and be sure to keep my name absolutely out of this; I don't want to be called as a witness because I don't intend to listen to any of the trial". Just before leaving she cautioned the witness by stating "don't let them know that I brought you the money or they would consider it a bribe and bring my name into it. I didn't know what the circumstances were when I brought the $100.00 to you, so protect me is all I ask. Don't forget what I told you".

Appellant, testifying in traversal of the Government's evidence, admitted that she was taken to the home of the witness by Petty for the purpose of delivering the $100 and that she told the witness Petty wanted her to see his attorneys, but contended that she went as an old friend in an attempt to aid and assist the witness, and not to influence her testimony. She further admitted telling the witness about the letters Petty claimed to have in his possession, and having advised the witness that when testifying "she didn't need to say anything if she didn't want to; she could always say 'I don't know'," but that she made the statement "just like anyone would make any statement", and not in an attempt to influence her. She denied knowing that the witness had been subpoenaed until her second visit and that she then berated her for not having revealed this fact. But on cross-examination she admitted that at the time the indictment was returned she knew the Government was contending Petty had transported the witness from Idaho to Utah and that he would be tried on the indictment; that she had also read about the indictment in the papers and had heard others discuss it.

In challenging the sufficiency of the evidence, appellant contends that there is no proof from which the jury could legitimately infer that the acts charged were committed with intention of corruptly influencing the witness. And, moreover there is no evidence tending to show that appellant knew the person attempted to be influenced had been subpoenaed as a witness. That such knowledge is a prerequisite to a conviction under the indicting statute, and the judgment should therefore be reversed.

■ Section 135 of the Criminal Code, 18 U.S.C.A. § 241, is designed to protect witnesses in Federal courts and to prevent a miscarriage of justice by corrupt methods. Samples v. United States, 5 Cir., 121 F.2d 263, 265; Smith v. United States, 8 Cir., 274 F. 351, 353. The pivotal word of the statute is "endeavor" and "it describes any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L. Ed. 553. See also United States v. Polakoff, 2 Cir., 121 F.2d 333. "The word 'corruptly' is capable of different meanings in different connections", Bosselman v. United States, 2 Cir., 239 F. 82, 86, and as used in Section 135 of the Criminal Code, we think any endeavor to influence a witness or to impede and obstruct justice falls within the connotation of the word. Bosselman v. United States, supra; United States v. Polakoff, 2 Cir., 121 F.2d 333.

■■ The appellant knew there was a proceeding in Federal court against Petty

for having transported the witness in interstate commerce and she admitted advising the witness how to testify when called. There was evidence from which the jury was justified in concluding that she knew the witness had been subpoenaed when she talked to her on the second day. Furthermore, a reasonably founded belief that she was a witness is sufficient to make the requisite scienter, since she was in fact a witness. Odom v. United States, 5 Cir., 116 F.2d 996. The question of knowledge is one for the jury and was resolved adversely to appellant.

 In sum, the jury was justified in believing beyond a reasonable doubt that appellant by promises of financial security and threats of character defamation, had endeavored to corruptly influence the witness in a criminal proceeding pending in the United States District Court and to obstruct and impede justice therein.

The judgment is affirmed.