DAWKINS Chief Judge.
On April 8, 1949, a grand jury convened at Monroe, Louisiana, .returned three indictments charging conspiracies, with two of which only are we concerned here.
In No. 12,204 H. Alva Brumfield and Hugh Arnold Guy were alleged to have conspired to violate Section 135a of the Federal Criminal' Code, Sec. 241a,[1] Tit. 18 U.S.C.A., “by corruptly endeavoring to influence, obstruct and impede the due and proper administration of the law * * * a proceeding * * * then being had before an agency of the United States,- to-wit: the Federal Petroleum Board * * * ” and that said conspiracy was. “carried into effect” by corruptly inducing certain witnesses “to testify falsely, to suppress and withhold material facts and to give exculpatory and false information” to “said Board * * * ” while it was properly-inquiring into the “operations of the said Hugh Arnold Guy and the Southern States Refining, Inc., of which he was president,, involving or incident to the transporting, receiving, storing, refining and delivering, of petroleum and products thereof, and the making, keeping, and filing of prescribed records and reports relating to such operations for the purpose of duly and properly administering the law, that is, the Connally Act, 49 Stat. 30, as amended, Sec.. 715 et seq., Tit. 15 U.S.C.A., under which said proceeding was being had, and with the object of ascertaining whether any of the criminal provisions of the said Act had been or were being violated.”
In the second indictment, No. 12,205, one D. O. Edmonson, the said Hugh Arnold-Guy and Southern States Refining, Inc., are-similarly charged with conspiracy, together with Louis B. Wilcox * * * “not indicted here” with violating “Section 35(A)-of the Criminal Code, Section 80,[2] Tit. 18-U.S.C.A. * * * by the knowing, wilful, unlawful and felonious making and causing to be made * * * in a matter within the jurisdiction of a department and agency of the United States * * * certain false reports, accounts and certificates”, knowing them to be false “ * * * by filing * * * one of said false reports * * * on behalf and in the name of Southern States Refining, Inc. with the Federal Petroleum Board at Kilgore, Texas, each month during the continuance of said conspiracy * * * in violation of the provisions of the said Connally Act.”
Motions to dismiss and attacks upon the proceedings of the grand jury, in all respects similar, were filed in both cases and they will be considered and disposed of in a single opinion.
On May 17, 1949, Guy was arraigned and plead guilty to both indictments.
On May 20, 1949, Brumfield plead not guilty without prejudice to the right to file any proper motions and pleas, and at the same time filed two motions to dismiss. *699 Subsequently, on July 1, 1949, he filed a supplemental motion to- dismiss and the Government in turn filed a “motion to strike -defendant’s motion to dismiss.”
On the same day Edmonson plead not guilty and filed similar motions to dismiss. The corporation does not appear to have been arraigned in said case, No. 12,205.
Indictment No. 12,204.
The plea to the jurisdiction will be considered first. It is based upon the contention :
(1) That -the Connally Act, Sec. 715d, '7l5h, 7l5i and 7l5j, Tit. 15 U.S.C.A., does not authorize the Federal Petroleum Board to conduct investigations or proceedings involving criminal violations of the said statute;
(2) Sections 241a and 242[3] of Tit. 18 U. S.C.A. have been repealed and no proceeding was pending involving the subject matter of this indictment at' the time thereof, which could preserve the right to institute this prosecution;
(3) That Section 135a of the Criminal Code, Section 241a, Tit. 18 U.S.C.A., is unconstitutional for “lack of specificity”, in that said statute fails to set up an ascertainable standard of guilt in violation of the Fifth and Sixth Amendments of the Constitution of the United States;
(4) That said indictment does not allege facts constituting an offense under said last mentioned statute; and
(5) The indictment is too “vague, contradictory, duplicitous, uncertain and indefinite” to support an indictment of conviction or acquittal.
1. It is common knowledge that the Connally Act grew out of the distressing conditions in the crude oil industry following discovery of the East Texas Oil Field in the early 1930’s, coincidentally with the worldwide depression, which caused the price of crude, which had, following the first world war, soared to more than $3.00 a barrel, to become a drug on the market and to be sold for as little as IO5Í a barrel. The state of Texas and others, had, in order to prevent waste, and to conserve their natural resources, passed certain statutes and imposed restrictions requiring proration, and limiting the quantities that could be taken from the wells in various fields. Widespread violations of these laws and regulations were taking place, and what was called “hot oil” was moving into interstate commerce in large quantities. The situation became such that Congress was induced to take notice of it under its power -to regulate interstate commerce, and while first efforts were abortive, what is now called the “Hot Oil” or Connally Act, having been sponsored by Senator Connally of Texas, was passed, has been held valid and been in force now for more than a decade. This statute, Act of Feb. 22, 1935, 49 Stat. 30, prohibits the shipment in interstate commerce of crude oil produced in violation of state laws and regulations. In the first section it is declared “to be the policy of Congress to protect interstate and foreign commerce from * * * the harmful effect * * * caused by contraband oil * * * and to encourage the conservation of deposits of crude oil situated within the United States”. Section 2 defines contraband as “petroleum * * * which was produced, transported, or withdrawn from storage in excess of the amounts permitted * * * under the laws of a state * * and Section 3 prohibits its shipment in interstate commerce.
Section 4 authorizes suspension of certain provisions of the Act not pertinent here.
Section 5(a) directs the President to prescribe such “regulations as he finds necessary * * * for the enforcement of the provisions of this Act, including but not limited to regulations requiring reports, maps, affidavits, and other documents relating to the production, storage, refining, processing, transporting, or handling of petroleum * * * and providing for the keeping of books and records, and for the inspection of such books and records and of properties and facilities * * * (Emphasis by the writer.)
*700 Subsection (b) of’ said section- 5 provides:
'“Whenever the President finds it necessary or appropriate for the enforcement of the provisions of this Act he shall require certificates of clearance • for petroleum and petroleum products moving or to be moved in interstate commerce'from' any particular area,; and shall establish a board or boards for the issuance of such certificates. A certificate of clearance shall be issued by á board so established in any case'where such board determines that the petroleum or petroleum products in question does not constitute contraband' oil: Denial of any such certificate shall' be by' order of the board, and -only aftef reasonable opportunity for hearing. Whenever ' a certificate of clearance is required for any area in any State, it shall be unlawful to ship or transport petroleum or petroleum products in interstate commerce from such ‘area unless a certificate has been obtained therefor (Emphasis by the writer.)
Section 5(c) details the manner in which the Board shall determine whether oil is contraband, for hearing and review by the Courts; and Section 6 prescribes a fine of not more than $2000, or not more than six months imprisonment, or both for violations of the statute and regulations made pursuant thereto. Section 7 provides procedure for the seizure, condemnation, and forfeiture of oil shipped in interstate commerce in violation of said Act. Section 8 permits common carriers to refuse acceptance for shipment of contraband oil and relieves them from any criminal or civil- liability therefor when they act in good faith.
Section 9 declares:
“Any- board established under authority of section 5, and any-agency designated under authority of section 11, may hold and conduct such hearings, investigations, and proceedings as may be necessary for 1 the purposes of this Act, and for such -purposes those provisions of section 21 of the Securities Exchange Act of 1934 relating to the administering of oaths and affirmations, and to the attendance and testimony of witnesses and the production of evidence (including penalties), shall apply.”
Section 10 provides for enforcement of the Act by the Attorney General through both civil and criminal process, including “mandatory injunctions commanding any person to comply with the provisions of the Act or any regulation issued thereunder,” and by criminal proceedings where “the violation occurred.”
Section 10(c) is quoted as follows:
“The United States District Courts shall have exclusive jurisdiction of violations of this-Act or the regulations, thereunder, and5 of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this Act or the regulations thereunder. Any criminal proceeding may be brought in. the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this Act or -regulations thereunder, or to enjoin any violation of this Act or any regulations thereunder, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the-defendant is an inhabitant or wherever the defendant may be found. Judgments and! decrees so rendered shall be subject to-review as provided in sections 128 and 240 of the Judicial Code, as amended (U.S. C., title 28, secs. 225 and 347)”. (Emphasis by the writer.)
Section 11 provides:
“Wherever reference is made in this-Act to the President such reference shall be held to include, in addition to the-President, any agency, officer, or employee-who may be designated by the President for the execution of any of the powers and functions vested in the President under this Act.”
At the time of the passage of this statute it was generally understood that Congress had no'power to deal with or regulate the production of oil or other minerals until they entered interstate commerce, but that this was solely a function of the States. (As to -what might be decided now, in view of other measures and the interpretation thereof dealing with the “production of *701 goods for commerce”, we are not concerned here.) The chief purpose, as commonly known, and, as demonstrated lby the wording of the provisions of the Connally Act itself, was to aid the States in the enforcement of their conservation laws, and to deny use of the channels of interstate commerce to those who violated them. All its provisions seem to have had that end in view, and it is largely a penal statute prohibiting and punishing the use of interstate commerce for violating state laws.
Counsel for defendant have made very able, exhaustive and extensive arguments, both orally and in several briefs, to the point that the powers of the Petroleum Board and other agents and agencies authorized by the Act are limited, in their investigations and power to compel attendance of witnesses, etc., to civil proceedings wherein the granting or refusal of clearance certificates or similar orders are involved. Relying upon the well recognized rule that criminal statutes are to be strictly construed, both in their substantive , and procedural provisions, they say nothing can be found in the Connally Act, which authorizes “investigations or proceedings”, the purpose of which may be the enforcement of its criminal penalties. It is argued that the reference in Section 9(a) to the Securities Exchange Act of 1934, Sec. 21, 15 U.S.C.A. § 78u, which is quite long and detailed in its provisions, was intended to include only the promsions for administering oaths or affirmations, compelling attendance and the giving of testimony by witnesses, including the production of documents, in pending civil proceedings.
But if this were conceded (other than the assertion that civil proceedings alone were contemplated) it would not take away from the unqualified language which precedes it, the force of the declaration that, “any board established under authority of Section 5[b] and any agency designated under authority of Section 11 [quoted above] may hold and conduct such hearings, investigations, and proceedings as may be necessary for the purposes of this Act.” (Emphasis by, the writer.)
These provisions of the Securities Exchange Act, as to administering oaths, summoning witnesses, compelling attendanee, etc., are not limited to, “a proceeding”, but may be used in hearings, investigations, and proceedings carried on by any agency created or authorized by the Connally Act. It must be remembered that all such hearings and investigations have for their principal object the ascertainment of whether the state law has been complied with, and the doing of any of the things which the Connally Act denounces, such as shipping contraband oil in interstate commerce, which has been produced in violation of state laws. As above stated, section 3, in no uncertain terms, declares that “the shipment or transportation in interstate commerce from any State of contraband -oil produced, in such State, is hereby prohibited.”
In view of subsection (1) of section 2 defining contraband oil, section 3 preventing its shipment in interstate commerce, and section 6 providing punishment therefor, to say there is no authority in the Board or other agency prescribed by this Act to hold such hearings and make such investigations, including the use of those portions of the Securities Exchange Act as are authorized by Section 9(a) of the Connally Act, if the acts so investigated happened to be criminal, would be to virtually emasculate the law.
It would be quite interesting to consider and differentiate the large number of decisions, etc., cited by counsel on either side; but in the judgment of this Court, it would not aid materially in the decision of this case.
From what has been said, it seems clear, from Section 9(a), that the Board “and any agency” under authority of Section 11, above quoted, “may hold and conduct such hearings, investigations, * * even though it involves the commission of a crime; and, in doing so, use the processes provided by Section 21 of the Securities Exchange Act. If they can do this, then it would further seem that there is an even greater reason for safeguarding such investigations in the initial stages, when information is being sought, than later, when issue has been joined with a particular individual as to his right to a *702 certificate permitting shipment of oil in interstate commerce.
The indictment' in this case charges specifically that the defendants had conspired to “knowingly, wilfully, unlawfully and feloniously violate the laws of the United States * * * by corruptly endeavoring to influence,' obstruct and impede the due and proper administration of the law under which a proceeding was then being had before an agency of the United States, etc.” (Emphasis by the writer.) This meets the requirements of Section 241a, (even under defendant’s contention) when it declares “whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any (party thereto) witness in any proceeding pending before any department, independent establishment, board, commission, or other agency or who corruptly or by threats, * * shall influence, obstruct, or impede * * * the due and proper administration of the law under which such proceeding is being had before * * * a board, -commission, or other agency of the United States * * *" shall be punished as therein provided.
The Connally Act, like the Securities Exchange Act, was designed to cover and control activities in a large and nationwide business or industry. It laid down definite restrictions on the use of interstate commerce and provided means for determining the nature and extent of activities affected by such restrictions. The general purposes were outlined in the Act, but the administrative details were left to the President, who was charged with the duty of enforcing it. For instance, he was directed, whenever he found it “necessary or appropriate for the enforcement of the provisions of this Act” to “require certificates of clearance * * * from any particular area, and shall establish a board or boards for the issuance of such certificates.” The certificate of clearance “shall be issued by a board so established in any case where such board determines that the petroleum or petroleum products in question does not constitute contraband oil.” (Emphasis by the Court.) This provision necessarily requires the Board, if it is to perform the duty of determining whether the oil is contraband, to make investigations as to whether it was produced in violation of State laws and regulations, and for that reason, contraband, the. withdrawal or shipment of which in interstate commerce, would violate said Act itself. In doing this, if the Board’s authority was limited to consideration of evidence, or documents, •such as affidavits or statements by persons seeking permits for shipment, and could not before application for shipment was made and considered, make independent investigations by requiring attendance of other witnesses and the production of relevant evidence as to the facts involved, then it would be placed more or less at the mercy of those whose activities it was created to supervise and control. Can it be said that in an industry as vast as the oil business, in which large numbers of persons and operations are to be supervised, the Board, notwithstanding it had received reliable information of violations of said laws and regulations by particular operators, would have to await formal application for a clearance certificate before it could conduct an investigation, even unknown to the persons involved? If this were required, prompt and speedy administration and enforcement of the law would be seriously handicapped. -
The Conclusion is that the Board was authorized to make investigations, hold hearings and conduct proceedings involving all types of activities, whether they gave rise to either criminal or civil liability on the part of persons concerned. Genecov et al. v. Federal Petroleum Board, 5 Cir., 146 F.2d 596; Zinser v. Federal Petroleum Board, 5 Cir., 148 F.2d 993.
This ruling applies also to U. S. v. Edmonson, et al., No. 12,205, in so far as similar motions therein are concerned.
2. As to the alleged effect of the repeal by Congress of Sections 135a and 136 of the • Criminal Code, it is sufficient to say that in the repealing statute, which *703 took effect September 1, 1948, it was expressly provided:
“The sections or parts thereof of the Revised Statutes or Statutes at Large enumerated in the following schedule are hereby repealed. Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal.” Act June 25, 1948, § 21, 62 Stat. 862, T. 18 U.S. Code Cong. Service, p. 2412, U.S. Criminal Code.
The indictment charges that the conspiracy began on or about October 7, 1947, and continued until the returning of the indictment on April 8, 1949; so that for the purpose of this contention the “rights or liabilities * * * existing under such sections or parts thereof” were not affected by this repeal. In other words, the indictment charges the conspiracy had existed from October 1947 and the latest overt act was laid as of June 15, 1948, several months before the repeal became effective. For this reason the acts so committed had given rise to the charge of conspiracy involved here, before repeal.
3. It is claimed that because the statute, section 135a of the. Criminal Code, Sec. 241a of Tit. 18 U.S.C.A. used the word “corruptly” as does the indictment, in connection with the activities, which the latter charges was the purpose of the conspiracy, no standard of guilt is set up, since “corruptly” has no fixed meaning.
Prior to the enactment of this section, Section 135, section 241[4] Tit. 18 U.S.C.A., had been a part of the criminal law for more than a quarter of a century, and had been interpreted by the courts. It dealt with similar acts of impeding witnesses in the “administration of justice”, whereas 135a made similar provisions for the “administration of the law” by departments, boards and agencies of the United States, as distinguished from the Courts. See Felder v. U. S., 2 Cir., 9 F.2d 872; U. S. v. Polakoff et al., 2 Cir., 121 F.2d 333; Samples v. U. S., 5 Cir., 121 F.2d 263; U. S. v. Perlstein, 3 Cir., 126 F.2d 789; Broadbent v. U. S., 10 Cir., 149 F.2d 580; Bosselman v. U. S., 2 Cir., 239 F. 82; Hurley v. Federal Tender Board, No. 1, 5 Cir., 108 F.2d 574.
These attacks upon Section 135 have not been directly to the point raised here, that is, the wide meaning of “corruptly”, no doubt because that statute, as does the one in the present case, proceeds to state with particularity what kind of conduct was intended to be covered, to-wit: “corruptly * * * endeavor to influence, intimidate, or impede any witness * * * or endeavor to influence, obstruct, or impede the due administration of justice * * * ”. Similarly, Sec. 135a, section 241a, Tit. 18, describes the type of corruption intended when it says “whoever corruptly * * * shall endeavor to influence, intimidate, or impede any * * * witness in any proceeding * * * the due * * * administration of the law.” In other words, this was simply an extension of the, old law to apply to departments, boards and agencies, in the administration of the law. The indictment in the present case specifically charges that at least some of the witnesses had testified, and others were about to be called, “for the purpose of inquiring into the operations and transactions of the said Hugh Arnold Guy and the Southern States Refining Co., Inc., of which he was president, involving or incident to the transporting, receiving, storing, refining and delivering of petroleum and products thereof, and the making and keeping and filing of prescribed records and reports relating to such operations and transactions, and for the purpose of duly and properly administering the law, that is to say, the Connally Act * * *”. Anyone should be able from this to understand what he was accused of conspiring to do.
4 and 5. From what has been said it is not seen how the bill can be said to be duplicitous and vague or how the accused could fail to understand the nature of the offenses, which the indictment charges them with conspiring to commit.
*704 The Attack upon the Grand Jury.
1. The first paragraph of this motion charges that the grand jury “considered evidence presented to them by the United States Attorney and by one James R. Lewis, Chairman or Representative of the Federal Petroleum Board”. This does not state specifically any fact, which, if proven, would invalidate the indictment. The law makes it the duty of the District Attorney to present evidence to the grand jury. As to Lewis, what is said in this first attack, does not make it appear that Lewis did anything more than to present evidence, which might have been either his own testimony or documents or objects bearing upon the case, which he was required to produce and identify, as a witness, before the grand jury.
2. This attack charges that parts only of a signed statement made by Guy, co-defendant of the mover, were “read” to the grand jury, when he, Guy “was present in the city of Monroe and could have been called to testify”, and it 'was upon this evidence that the grand jury indicted "your movent.”
Both Brumfield and Guy were under investigation by the grand jury, .and it can not be doubted that any statement made by the latter against interest was admissible as to him. No reason can be seen why Lewis whq took the evidence could not appear and identify it. The motion does not state that there was no other proper evidence tending to involve Brumfield, but simply the conclusion “it was upon this evidence” that he was indicted, which amounts to ño more than the opinion of the pleader that it was based upon that evidence rather than any other which may have been submitted. Incompetent evidence would not 'affect' the validity of the indictment, if there was other competent evidence sufficient to support the charge.
3. The third attack charges that Lewis was “present in the grand jury room while the case was being presented * * * by the United States, District Attorney, in violation of Rule 6(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., * * * and that said Lewis played a prominent role before the said grand jury in the presentment of the evidence, which resulted in the indictment against your movent.”
Of course, the charge that Lewis was present, in violation of Rule 6(d) is a legal conclusion. For aught that appears, he may have been present in the “role” of a witness, and his testimony might have •had a “prominent” part in causing the indictment. The burden is upon the defendant in charges of this kind, to state facts, not conclusions, since public policy surrounds the proceedings of a grand jury with a strong presumption of legality and regularity.
4. As to the fourth attack, it would make no difference by whom the form of the indictment was prepared, so long as the grand jury adopted it and the evidence was sufficient to support the charge. It is common knowledge, to those who are familiar with the practice, that the District Attorney, or someone in his office, in a large percentage of cases, prepares the indictment, based upon information, such as reports of the F. B. I., and othér agencies, which is subsequently submitted to, and if accepted by the grand jury as being supported by the facts, becomes the formal indictment.
S. This paragraph charges that “in the progress of the hearing the statement was made (either by Lewis or by the District Attorney) to the grand jury, in an effort to obtain an indictment against your movent, that in order to indict Guy, it was necessary and essential that your movent, likewise be indicted, which Statement was coercive in its nature, and influenced the grand jury, which returned the indictment”, making it “null and void”.
As to Lewis, there is no positive allegation that he made the statement. The law makes the District Attorney the legal advisor of the grand jury and there is nothing of fact charged here to dispute the proposition that the District Attorney informed the grand jury correctly that no one can be charged with conspiracy without the involvement of others. In other words, that one can not conspire with himself, but there *705 must be at least one other participant. Here again, the charge of coercion is a legal conclusion, not supported by the specific facts alleged.
6. As to whether Lewis knew the relationship of Brumfield to Guy, as the latter’s attorney, this could have no bearing upon the validity of ¡the indictment.
7. Neither did it make any difference whether this defendant knew that he “was under suspicion of wrongdoing”.
8. Nothing in the law requires that one under investigation by a grand jury have knowledge or notice of the fact. Such persons have no legal right to require that they be called and heard as witnesses.
9. This paragraph alleges simply that in view of the charges embraced in the preceding articles, “the veil of secrecy should be removed” from the grand jury proceedings “for a full and complete hearing” and that an order should be issued “permitting your movent and his attorneys to interview the members of the grand jury and the witnesses and other persons that appeared before the grand jury * * * for the purpose of inquiring into such proceeding to ascertain the verity of the charges above set forth.”
It appearing that ¡the charges, neither alone nor in globo, state facts warranting an invasion of the secrecy, which the law throws around the investigations and deliberations of a grand jury, this request can not 'be granted.
10. Here, it is simply alleged that the investigation “will reveal that there was no competent evidence of any kind or nature that was ever adduced before the grand jury tending to show guilt on the part of your movent of the charges alleged in the indictment * * *
For the reasons stated, with respect to other paragraphs, the law requires a positive showing or allegation of facts to support the claim that there was no other competent evidence besides the portions of the statement of Guy alleged to have been read by Lewis, such as the testimony of other witnesses, documents or exhibits, presented to the grand jury. Then too, the motion is not supported by affidavit of the defendant or otherwise, as would seem necessary in seeking an exposure of the grand jury proceedings. Strong and positive showing is required of persons seeking such relief. Otherwise, it would be possible in every case by simply alleging the want of evidence or other irregularities to get “a preview” of the Government’s case in almost every instance, if the accused were so disposed. U. S. v. American Medical Ass’n, D.C., 26 F.Supp. 429 and authorities cited.
Supplemental Motion to Dismiss.
In the supplemental motion to dismiss, filed July 1, 1949, it is charged that “one R. Bennett, an employee of the Federal Petroleum Board, as well as James R. Lewis, was present in the grand jury room while the progress of the hearing was being had and while witnesses were testifying, and both Lewis and the said Bennett were unauthorized persons to have been present in this character of proceeding, which vitiates the indictment.”
This charge does not say that both Lewis and Bennett were in the grand jury room at one and the same time, and it might well be that they were there at different times, that is, as witnesses. Insofar as the motion charges that either or both were there “while the witnesses were testifying”, use of the plural “witnesses” might be construed to mean that they were there when more than one witness testified, thereby implying the testimony was being given by someone other than themselves.
However, here again, even if the allegation is so construed as a positive fact, such charges can not be based “on information and belief”. See U. S. v. American Medical Ass’n et al., supra; Shushan v. U. S., 5 Cir., 117 F.2d 110, 133 A. L.R. 1040.
The allegations of this supplemental motion would indicate that either some member of the grand jury, contrary to his oath, or a witness, has made some statement concerning the matters charged, otherwise it could not be known whether anyone besides the witness, one at a time, was before that body, except where someone, who stood in a position to see, could swear *706 that more than one person or witness entered the grand jury room, while others were still in there, and remained a sufficient length of time to support the conclusion that they were being interrogated.
The rules of Criminal Procedure 6(e) provide that, “a juror, attorney, interpreter or stenographer may disclose matters occurring before a grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule.” (Emphasis by the writer.) See Federal Rules of Criminal Procedure with notes and Institute Proceedings published by New York University School of Law Institute, Vol. 6, p. 10. The notes of this work under this rule (p. 13) state that it “does not impose any obligation of secrecy on witnesses” but cites no authority.
However; in view of the uniform holding that the presence of unauthorized persons in the grand jury room during its investigations and deliberations vitiates an indictment, if these charges can be supported by the oath of someone to facts in-' stead of on information and belief, it is the Court’s view that the introduction of evidence by both sides should be permitted for the purposes of determining whether or not the charge is true.
This does not affect what has been said above as to the other grounds for attack upon the grand jury proceedings.
This motion charges that an examination of the alleged overt acts in furtherance of the conspiracy will show that all ate attributable to defendant, Guy, except Nos. 12, 17, 19 and 20; that at the same sitting the grand jury' returned another indictment against Edmonson and Guy, No. 12,-205, and a third against Isaac M. Thompson and Guy; that mover was first employed by Guy as his attorney on March 12, 1948, for the purpose of “adjusting substantial tax deficits due the State of Louisiana, and for the further purpose of defending him against criminal charges both in the State and Federal Courts, that grow out of tax matters”; that all of the “alleged overt acts” in these two other indictments occurred prior to mover’s employment, and that none has been “developed since”; that in all contacts with the Petroleum Board, it was conceded that Guy had been guilty of making false statements in regard to his oil operations, and the purpose of mover’s employment was to get the best financial settlement possible and to represent Guy in any criminal charges that might be made.
Further, that in the course of his conversations and contacts with Lewis and Bennett, they insisted that his client, Guy, “should make a voluntary statement * * * about his activities and * * * be subject to full crossexamination * * * on the part of said agency;” that notwithstanding Guy’s admissions as to making false returns, etc., he, Brumfield, advised his said client not to make such statement, which advice was followed and the statement was refused by Guy; that said Lewis and Bennett “became highly incensed and undertook a campaign of bitter criticism” and repeatedly stated “that they intended ‘to get movent’ ”: that as a result of this pressure upon Guy, he “dropped movent as his attorney” and employed another, which fact was not made known to mover until after the indictment was returned; that thereafter Guy informed him that this course had been pursued “because of the hostile attitude of * * * Lewis and Bennett”; and finally, that some time in December 1948 or January 1949, Guy had, on the advice of his then attorney, appeared before Lewis and made his statement, which required a period of several days; that “parts of the statement were used in the grand jury hearing, which returned the indictment against movent and that same is still in the possession of the Federal Petroleum Board and the District Attorney.”
It is further alleged that, after his having been “dropped” as attorney for Guy, for approximately six months, he, defendant, heard nothing more from his said client; that the indictment “against mov *707 ent was apparently based upon some kind of hearing, which was conducted before the grand jury * * * without notice to movent, and without invitation * * * and the opportunity to appear and testify therein, all as a part of the purpose on the part of Lewis ‘of getting movent’”; that he had no contact or information from Guy that his service as attorney had been anything “other than that of the normal relationship which exists between attorney and client”, from which he might “have felt that there was any basis whatever for the charge of conspiracy” made herein; that mover has, through his attorney, endeavored to get from the District Attorney the said testimony of Guy without success; and finally, in view of the fact that Guy has pleaded guilty to all three indictments, it is evident that the Government intends to use him as a witness against mover and that the prosecution should be required to produce the said statement in order that it might be copied or photographed, and this relief should be granted in view of Rules 16 and 17 of the Rules of Criminal Procedure; that this evidence will show “on its face” that “there was no basis for the charge against movent whatever”; and that in view of the prior relationship of attorney and client between mover and Guy, he is entitled to a copy of said statement “to properly anticipate for himself and for the benefit of a trial jury, the motive, weight and significance of the testimony of the said Guy * * * on the trial * * *
Boiled down this motion asks that the Court require the District Attorney or the Federal Petroleum Board, whichever has it, to produce the statement made by Guy to the Board. The only statutory provisions dealing with this matter are to be found in Rules 16 and 17 of the Rules of Criminal Procedure. Rule 16 provides:
“Discovery and Inspection. Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just.” (Emphasis by writer.)
The pertinent provision of Rule 17 is paragraph (c) and is as follows:
“(c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.”
It thus appears that insofar as Rule 16 applies, the discretionary power implied in the use of the words “the Court may order” the production of such records or documents, includes only such as have "been obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.” (Emphasis by writer.)
That portion of Rule 17 quoted is simply complementary to Rule 16 in providing for subpoena addressed to the party having possession of the documents, to produce them. As has been pointed out in the decisions, the reason for this rule is that, but for the taking and impounding of such documents, they would in defendant’s possession or that of others, be available to him in preparing his defense. Here, however, the statement sought does not fall into either category, that is, of documents taken from him, or seized in the hands of *708 •someone else. It is the statement made, presumably voluntarily, by the co-defendant, whom it is charged will be used as a witness against this defendant.
If Guy, at -the trial, should be use'd as a witness, it will then be time enough to consider whether this statement should be produced, for the purpose of impeaching or discrediting Guy, if his testimony should be in conflict therewith. See Shores v. U. S., 8 Cir., 1949, 174 F.2d 838; and authorities therein discussed and analyzed. It is not seen how the failure to obtain production of this statement in advance of the trial could prejudice the defendant in the preparation of his defense. He evidently knows the facts and the witnesses by whom he can prove them from his standpoint. I.t might be that some of these facts, important to this defendant, are known only to him and Guy, but, if as alleged, the latter is hostile, he will not be called by Brumfield and therefore such information would be available only on cross examination; if Guy is used as a witness by the prosecution, at that time the request for the statement may be considered further.
For the reasons stated in this opinion the plea to the jurisdiction, motions to dismiss, and discovery and inspection will be denied except as stated herein.
Proper decree should be presented.

. See 1948 Revised Criminal Code, 18 U.S. C.A. §§ 287, 1001.

. See 1948 Revised Criminal Code, 18 U.S.C.A. §§ 371, 1505.

. See 1948 Revised Criminal Code, 18 U.S.C.A. § 1503.