**UNITED STATES of America**

v.

**Nathan O. BOWMAN, Appellant.**

**No. 78–1915.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 15, 1979.
Decided Oct. 24, 1979.

---

Dennis M. Hart, Washington, D. C., with whom Kenneth Michael Robinson, Washington, D. C., was on brief, for appellant.

Genevieve Holm, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Roger M. Adelman, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Also William E. Bucknam, Asst. U. S. Atty., Washington, D. C., entered an appearance, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and HAROLD H. GREENE,* United States District Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

**14**

MacKINNON, Circuit Judge:

Nathan O. Bowman was indicted for bank robbery and in his trial in the United States District Court for the District of Columbia he was acquitted of the charge, *United States v. Nathan Bowman*, Criminal Case No. 76–796. It appeared to the Government, however, that he had threatened two witnesses who testified for the government in the trial and he was accordingly indicted for obstructing justice. The indictment contained three counts charging endeavors to obstruct justice in violation of 18 U.S.C. § 1503. The First and Second Counts charged corrupt endeavors by threats to influence, intimidate and impede James Jackson, and George Jackson respectively, both government witnesses in the bank robbery trial. The Third Count in slightly different terminology charged a similar corrupt endeavor to obstruct justice by impeding George Jackson.

At the April, 1978 trial of Bowman on the obstruction of justice charges he was acquitted on the Third Count. However, the jury was unable to agree on the First and Second Counts and a mistrial was declared on those counts. At the subsequent trial on these two remaining counts Bowman was convicted on both counts, i. e., obstructing James Jackson (First Count) and George Jackson (Second Count) and sentenced to consecutive sentences of five years on each count plus a committed fine of $2500. The appeal from the judgment in the second obstruction of justice trial is now before us.

We affirm the conviction on the First Count, order the judgment on the Second Count vacated, and remand the case for resentencing.

**I**

The principal issue is appellant's claim that the double jeopardy clause of the Fifth Amendment [1] was violated by his trial, conviction and sentence on the Second Count involving George Jackson. The answer to this contention requires an analysis of the Second and Third Counts and certain events at the first trial on the obstruction of justice charges. We set out the counts in the margin. [2] Both counts charged obstruction of George Jackson as a witness in violation of 18 U.S.C. § 1503.

Bowman contends that the double jeopardy clause of the Fifth Amendment barred his retrial on Count Two. His theory is that, *because of the jury instructions*, the "not guilty" finding in the first trial on the Third Count amounted to a ruling "by implication" that the jury was also finding Bowman not guilty on the Second Count. We have thoroughly examined this contention and reject it without discussion because we find that the Government in a second trial is collaterally estopped from litigating the issues presented by the Second Count.

Our analysis begins with a comparison of the factual allegations of the offenses alleged in the Second and Third Counts of the indictment. The Second Count charged

1. "No . . . person [shall] be subject for the same offense to be twice put in jeopardy of life or limb . . ." U.S.Const., amend. V.

2. SECOND COUNT:
   On or about July 19, 1977, within the District of Columbia, NATHAN O. BOWMAN and JAMES NEIL LARRY, JR., also known as "SPORTY," corruptly endeavored by threats to influence, intimidate and impede George Jackson in the discharge of his duties as a witness, well knowing that George Jackson had been identified as a witness for the United States in the case of *United States v. Nathan Bowman*, Criminal Case No. 76–796, then pending in the United States District Court for the District of Columbia.
   (Violation of Title 18, United States Code, Section 1503)

THIRD COUNT:
   On or about July 19, 1977, within the District of Columbia, NATHAN O. BOWMAN and JAMES NEIL LARRY, JR., also known as "SPORTY," corruptly endeavored to influence, obstruct and impede the due administration of justice by conveying to George Jackson threats and threatening communications, well knowing that George Jackson had been identified as a witness for the United States in the case of *United States v. Nathan Bowman*, Criminal Case No. 76–796, then pending in the United States District Court for the District of Columbia.
   (Violation of Title 18, United States Code, Section 1503)

that "Bowman . . . corruptly *endeavored* by threats to influence, intimidate and impede George Jackson in the discharge of his duties as a witness well knowing that George Jackson had been identified as a witness for the United States in [the Bank Robbery case against Bowman, No. 76–796] . . . ." (Emphasis added)

The Third Count charged that "Bowman . . . corruptly *endeavored* to influence, obstruct and impede the due administration of justice by conveying to George Jackson threats and threatening communications well knowing that George Jackson had been identified as a witness for the United States [in the Bank Robbery case against Bowman, No. 76–796] . . . ." (Emphasis added)

These counts are both based on violations proscribed by 18 U.S.C. § 1503, which provides:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, *endeavors* to influence, intimidate, or impede any witness, in any court of the United States . . . or corruptly or by threats or force, or by any threatening letter or communication, influences, *obstructs*, or impedes, or *endeavors* to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 769. (Emphasis added).

Bowman bases his appeal on the ground that the jury refused to follow the court's instructions. We find this contention to be without merit; but he also, almost in an aside, asserts the substance of a collateral estoppel theory: "the wording of the two offenses are nearly identical and both involve a unity of time, place and action." Bowman Br. 21.

In reply the Government argues that: Ample precedent supports the practice of charging a defendant with both *endeavoring* to impede a witness and *endeavoring* to impede the due administration of justice, even when both crimes stem from the same set of acts. *See Broadbent v.*

*United States*, [149 F.2d 580 (10th Cir. 1945)]; *Samples v. United States*, [121 F.2d 263 (5th Cir. 1941)]; *United States v. Meltzer*, 100 F.2d 739 (7th Cir. 1938); *Slade v. United States*, 85 F.2d 786 (10th Cir. 1936); *McCarthy v. Zerbst*, 85 F.2d 640 (10th Cir. 1936).

Govt. Br. 28–29.

The above cases cited by the Government in some instances do not deal with double jeopardy questions and the others do not support the Government's contentions. *Broadbent, supra,* merely held that there was sufficient evidence to support the verdict that the accused had endeavored to corruptly influence the witness and endeavored to obstruct and impede justice. The possibly duplicitous nature of the two counts was never raised, discussed or decided. 149 F.2d at 5821. *Samples, supra,* was a conspiracy case in which two objects of the conspiracy were alleged to be the corrupt endeavor *to intimidate* a witness and a corrupt endeavor *to obstruct* the due administration of justice. The case merely holds that the evidence at trial was sufficient to support the guilty verdict on the *conspiracy* charge. It is horn book law that proof of any single alleged object of a conspiracy is all that is required. Thus, double jeopardy was not at issue in this case.

*Meltzer, supra,* also does not support the Government's contention. It involved one offense charged under 18 U.S.C. § 241 of the Criminal Code (54 Stat. 13) which proscribed corrupt *endeavors* to threaten, etc., witnesses before federal agencies, and one offense charged under 18 U.S.C. § 245 (35 Stat. 1114) which made it an offense to wilfully *obstruct* an officer of the United States. 100 F.2d at 740. It is obvious that charging an uncompleted "endeavor" in one count and an actual completed "obstruction" in another count charges different crimes.

*McCarthy v. Zerbst, supra,* similarly involved clearly separate offenses in three counts:

(1) *impeding* administration of justice by assaulting a witness; i. e., striking and shooting him;

(2) *conspiring* to deter by force a witness from testifying freely;

(3) *conspiring* to injure a witness *after* he has appeared and given evidence.

85 F.2d at 642. It is self evident that these counts charge separate offenses.

The opinion by Judge Phillips in *Slade v. United States*, 85 F.2d 786 (10th Cir. 1936) also points out distinctions in cases arising under 18 U.S.C. § 1503, then codified at 18 U.S.C. § 241 (1934), that are central to the issues here. He states particularly that the provisions of the obstruction of justice statute, with which we are here concerned, involved three separate offenses:

(1) Corruptly, or by threats or force, or by threatening letter or communication, endeavoring to influence, intimidate, or impede a witness, juror or officer.

(2) *By the same means*, endeavoring to influence, obstruct, or impede the due administration of justice.

(3) *By the same means*, influencing, obstructing, or impeding the due administration of justice.

Classes one and two embrace an *endeavor* to accomplish a specific and a more general evil purpose. Class three embraces the *accomplishment* of an evil purpose.

85 F.2d at 790. (Emphasis added). While the statute has been amended since *Slade*, it has not been altered in any respect that would alter Judge Phillips' analysis or that would affect this case. It can thus be said that the present statute proscribes (1) corrupt *endeavors* by threats to impede a witness; (2) corrupt *endeavors* by threats to obstruct the due administration of justice; and (3) by the same corrupt means, actually *obstructing* the due administration of justice.

While *Slade* recognized the three classes of offenses, we note that the facts to which the decision was addressed only involved charges in one count that *Slade* "corruptly *endeavored* to impede," etc., and in the second count that he *did* "corruptly . . impede," etc., the due administration of justice. Thus *Slade* did not involve an indictment, such as we have here, where one count charges a corrupt endeavor to obstruct a witness and the second count based on the same charge of obstruction charges a corrupt endeavor to obstruct justice in general. In this indictment *both counts charge an "endeavor"*—one an endeavor corruptly to impede, etc., a witness in the discharge of his duties as a witness in a criminal trial, and the other an endeavor corruptly to obstruct the due administration of justice in the same case by impeding, etc. the same witness. There is no question that the two counts in *Slade* did not involve the same offenses, and a finding of former jeopardy will not lie unless the offenses are "precisely the same in law and fact . . . .". *Slade v. United States*, 85 F.2d at 790. Thus, none of the cases cited by the Government hold that a second trial on a corrupt endeavor to impede a specific witness will lie after an acquittal on the more general charge of corrupt endeavor to obstruct justice by impeding the same witness.

█ It is too plain for argument that, as the Third Count alleged, a corrupt endeavor to influence, *obstruct* and impede the *due administration of justice by conveying* to George Jackson *threats and threatening communications* well knowing that George Jackson had been identified as a witness for the United States in the Bank Robbery trial for all practical purposes is a charge essentially based on the same offenses as the Second Count which alleges a corrupt endeavor *by threats* to influence, intimidate and *impede* George Jackson *in the discharge of his duties as a witness* well knowing that George Jackson had been identified as a witness for the United States in the same Bank Robbery case.

The italicized words represent the only variations and each has its counterpart in the other count. "Obstruct" alleges nothing different from its synonym "impede". The "due administration of justice" is nothing more than a more general characterization of what is obstructed when one knowingly and corruptly by threats endeavors to "influence [a specific government witness] in the discharge of his duties as a witness . . . ." And the "threats" of the Second

Count are substantially the same as the more specific "threats and threatening communications" of the Third Count. Thus, except for the slightly more general allegation in the Third Count that Bowman endeavored "to impede the due administration of justice" by impeding a person he knew to be a witness, while the Second Count more specifically alleged he endeavored "to influence [a government witness] in the discharge of his duties as a witness," the two counts are essentially the same. The charges in the Second Count are therefore *included* in the slightly broader charges in the Third Count and under well recognized principles of law an acquittal on the broader charge collaterally estops a second trial on the narrower charge arising out of the same facts.

■■■ *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), recognizes that the doctrine of collateral estoppel is encompassed in the Fifth Amendment guarantee against being placed in jeopardy twice for the same offense. 397 U.S. at 436, 446, 90 S.Ct. 1189 (1970). Thus, prosecution for an offense is precluded when an issue of ultimate fact or *an element essential to conviction* has been determined in the defendant's favor by a valid and final judgment in a prior proceeding between the same parties. *United States v. Cala*, 521 F.2d 605, 607–08 (2d Cir. 1975); *Johnson v. Estelle*, 506 F.2d 347, 350 (5th Cir.), *cert. denied*, 424 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975). Under this rule, retrial is barred even if the charges could pass muster as separate offenses under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 n. 6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *Cf., United States v. Batchelder*, —— U.S. ——, ——, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). The applicabil-

ity of collateral estoppel is a question requiring examination of the entire record. *Turner v. Arkansas*, 407 U.S. 366, 368, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972); *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. 1189.

In explaining the doctrine, the Supreme Court made clear that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." 397 U.S. at 444, 90 S.Ct. at 1194. A court must take a practical view of all the circumstances in deciding whether collateral estoppel applies. This requires examining the record of the prior proceeding, including the pleading, evidence, charge, and jury instructions, and concluding ' "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration".' *Id.* (quoting Mayers & Yarbrough, *Bis Vexari*: New Trials and Successive Prosecutions, 74 Harv. L.Rev. 1, 38–39 (1960)). If an issue essential to the prosecution's case in the second trial has necessarily been decided for the defendant in the first trial, then the *Ashe* rule applies. Conversely stated, the rule requires "some legal necessity basic to one acquittal, not involved in the next trial, to justify a superseding conviction." *Johnson v. Estelle*, 506 F.2d 347, 350, 352 (5th Cir.), *cert. denied*, 424 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975).

In the present case, the parties addressed the question of collateral estoppel below, in connection with the defendants' motion to dismiss count two in the second trial.[3] The Government's brief glosses over the *Ashe v. Swenson* doctrine, attempting to distinguish this case as influenced by different considerations because Bowman was charged with more than one count, while Ashe was faced with successive one-count prosecutions. We

---

3. Memorandum in Support of Motion to Dismiss. Record, vol. 1, at # 30.

In denying the motion, the district court relied on obstruction cases which pre-dated *Ashe v. Swenson* by thirty years, to conclude that because count three required proof that a threat was *actually conveyed* a different fact was essential and separate offenses were

charged. This asserted distinction was not included in the jury instructions at trial. Tr. I at 450–58.

Focusing on the separate offenses theory, the Court did not address the estoppel principle in ruling on the motion. Record, vol. 1, at # 37 (Order of June 21, 1978).

reject the attempt to sweep aside *Ashe v. Swenson* and its progeny, and hold that the doctrine of collateral estoppel is controlling here.

An examination of the record in this case reveals that Bowman struck the heart of the issue below, in connection with his motion to dismiss count two in light of *Ashe v. Swenson.* In the memorandum accompanying his motion, Bowman pointed out the impossibility of being innocent of obstructing the due administration of justice by threatening George Jackson knowing that he was a witness and yet being guilty of endeavoring to obstruct the same George Jackson as a witness in the discharge of his duties, when the evidence in support of the two charges is identical.[4] In this case, the Government relied on the same evidence to establish both counts. Both the endeavor to obstruct due process charge (Third Count), and the endeavor to impede the witness charge (Second Count), are based upon Bowman's activity on one evening, when he contacted several acquaintances concerning the possibility that members of the Jackson family would testify against him in connection with his bank robbery trial. The evidence consisted of testimony from persons Bowman contacted in this regard, and concerned his remarks which allegedly contained threats to the effect that if James Jackson testified, revenge would follow.

At both trials, the Government's case consisted primarily of testimony from three witnesses who had been contacted by Bowman on the evening in question. The testimony at both trials was substantially identical. George Jackson testified that Bowman inquired if he had learned that George's brother James was going to testify against him in the bank robbery trial; if he had talked to an FBI agent about a bank robbery, and inquired of his mother, Sarah Jackson, if she had heard about James Jackson turning state's evidence on Bowman. As Bowman was leaving, he reportedly warned Jackson to tell his mother that "if anything happens to me in court, don't forget, I still have my family out on the street." He also cautioned that even if he could not "get" James Jackson, somebody would be able to, "no matter how long it takes."[5]

George Jackson did testify at the bank robbery trial, which preceded the trials for obstructing justice, but apparently his testimony differed from what he had previously told the FBI agent. In the obstruction trial, he explained that he "didn't want to get involved in the case," and was concerned for his family. He indicated that he had told the truth at the robbery trial, *except* in connection with how he learned about the bank robbery.[6] Thus the threats by Bowman caused the witness to be part of an obstruction of justice.

James Jackson's girl friend, Monica Harris, testified in the first trial that the co-defendant inquired if she had heard from James or if he had reported that James was supposed to testify against him the next day. Upon leaving, Bowman advised her in a "subtle" tone to find herself a new boyfriend.[7]

The FBI agent also testified that he had talked with George Jackson about the bank robbery, and that Jackson had later told him in detail about the threats he had received from Bowman. The agent reported that Jackson was nervous and upset about the incident.[8]

Bowman denied having made any threats and claimed he only asked the witnesses whether they were to be witnesses at his trial.[9]

On the facts of this case, as to the charges in the two counts, the evidence converges to the point that the only evi-

4. Memorandum in Support of Motion to Dismiss. Record, vol. 1, at # 30.

5. Tr. I at 34–44; Tr. II at 56–62.

6. Tr. I at 43–50, 56–61; Tr. II at 65–71, 101–05.

7. Tr. I at 198–209.

8. Tr. I at 124–27, 138–44; Tr. II at 179, 182–84.

9. Tr. I at 275–300; Tr. II at 370–84, 389–412.

dence on the obstruction charge in both trials was the testimony concerning threats to George Jackson. Thus, the acquittal in the first trial on the charge of obstructing justice by conveying threats to George Jackson, necessarily involved a decision that Bowman did not threaten him. Since that is the central charge in the Second Count we rule that the government was collaterally estopped from trying Bowman a second time on the Second Count and order that the conviction thereon be vacated.

## II

### A. *The Availability of Monica Harris*

■ Appellant Bowman raises three other issues, which we discuss because of their possible application to the First Count. We find them all to be without merit. He asserts that the Government failed to satisfy its burden under Rule 804 of the Federal Rules of Evidence, of proving the unavailability of Monica Harris at the second trial, to justify introducing her recorded testimony from the first trial. Harris moved to California between the first and second trials in this case, without notifying the prosecution. The Government mailed a subpoena to her last known address. At the beginning of the second trial, the prosecutor advised the court that he had later learned about Harris' move, and that she would not return for several days. Rule 804 of the Federal Rules of Evidence provides an exception to the Hearsay Rule for the admission of certain testimony where the declarant is "unavailable". The Rule in this respect provides:

> Rule 804 . . . (b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, . . . if the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Under the circumstances, the transcript of the prior testimony is admissible under the Rule because the witness was "unavailable" and the other conditions were complied with. At the first trial she had been subject to cross examination by the defendant. *See United States v. Curry,* 471 F.2d 419, 421 (5th Cir.), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973) (witness unavailable to testify at trial); *United States v. Hayes,* 535 F.2d 479, 482 (8th Cir. 1976) (transcript of witness testimony at prior trial held admissible where Government was unable to obtain service of subpoena); *United States v. Bell,* 500 F.2d 1287, 129 (2d Cir. 1974) (sick witness held unavailable; unavailability is for trial judge's determination in first instance and appellate court would not quickly overturn his ruling); *cf. Government of Virgin Islands v. Aquino,* 378 F.2d 540, 551 (3rd Cir. 1967) (government must make bona fide effort to secure attendance of witness). We also note that the testimony in the transcript was cumulative of George Jackson's testimony.

### B. *Evidence as to Character*

■ The appellant also contends that he was unfairly prejudiced by the trial court's instruction to the jury on character evidence, which stated that the character witnesses had been offered to show Bowman's truthfulness and veracity, and not to show his reputation for peace and good order. Tr. II at 523–25. In addition, the appellant claims that the Government impermissibly introduced general character evidence. The record reveals, however, that the defense witnesses testified as to Bowman's general character rather than his character for truthfulness. The trial judge instructed the jury that they should consider the testimony only as to truth, and allowed the Government to argue the character issue. Under the circumstances, Bowman's claim of prejudice must fail.

### C. *The Admitted Perjurer Instruction*

■ Finally, Bowman contends that the trial court erred in refusing to instruct the jury on the evaluation of the testimony of a witness he termed an admitted perjurer—

George Jackson. Jackson testified at the obstruction trial that he had not told the entire truth at the robbery, because he did not want to get involved and was concerned about his family. The jury therefore was aware of the circumstances in which George Jackson admitted not telling the truth. The trial court instructed the jury on the credibility of witnesses, conflicting testimony of a witness, and impeachment by conviction. Tr. II at 521–25. We find no reversible error in the refusal to issue the "admitted perjurer" instruction.

We accordingly order the District Court to vacate the judgment on the Second Count.

*Judgment accordingly.*