**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Glenn BAKER, Defendant-Appellant.**

**No. 73–2030.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1974.

Decided April 11, 1974.

Bert T. Combs, Louisville, Ky., for defendant-appellant; Samuel G. Bridge, Jr., Charles R. Simons, Louisville, Ky., Dan Jack Combs, Pikeville, Ky., on brief.

John M. Compton, Asst. U. S. Atty., for plaintiff-appellee; Eugene E. Siler, U. S. Atty., Lexington, Ky., on brief.

Before WEICK, EDWARDS and PECK, Circuit Judges.

PECK, Circuit Judge.

This is a direct appeal from a jury conviction in June of 1973 on a two-count indictment of threatening a federal witness in violation of 18 U.S.C. § 1503 (1968). The District Court imposed a maximum sentence by fining the

defendant-appellant Baker the sum of $5,000 on each count and imposing a 5-year imprisonment term on each count. The prison term on the second count was suspended and Baker was ordered to be placed on probation for a period of five years following the expiration of the sentence on the first count.

In October of 1971 one Tommy Kilburn was arrested by three Hazard, Kentucky, police officers for driving while intoxicated. A contemporaneous search of Kilburn's auto disclosed a .44 caliber revolver under the passenger's seat. At Kilburn's preliminary hearing, Baker testified that the gun was his and that he had mistakenly left it in Kilburn's auto earlier on the day that Kilburn was arrested.[1] The matter was then turned over to federal agents for possible federal prosecution concerning the firearm. In November of 1971, a federal grand jury indicted Kilburn, a convicted felon, for possessing the .44 revolver. At that time there appears to have been several charges, not all of which were federal, pending against Kilburn, including more than one firearm possession charge. Although the trial was originally set for December 8, 1971, it did not reach trial until June of 1973. In December of 1972, Baker executed as a surety an appearance bond for Kilburn in the federal prosecution for possession of the .44 revolver. Baker claims that it was at this time that he first learned of any federal investigation relating to the firearm.

## COUNT I

Count I regards an alleged threat to one of the police officers who arrested Kilburn. Sometime in December of 1971, Baker visited his friend Ed Johnson, the father of Officer George Johnson, and proposed that Ed ask George to join them. George arrived and the subsequent conversation between Baker and George, overheard by Ed, formed the basis for Count I. Ed testified that before his son arrived Baker complained about the arrest of "Tommy Kilburn and some of his boys." According to Ed Johnson, Baker then advised his son that "the boys were awful mad at him" and thought the police "needed a little charge." George testified that Baker said that in view of their friendship, he would see that George wasn't harmed "too much." Ed's testimony generally substantiated this alleged threat. George Johnson testified that he contacted federal agents following the alleged threat and that his house was placed under surveillance during the month of December 1971.[2]

At the trial and over the objection of Baker's counsel, testimony was permitted that the property where George lived was damaged by an explosion in early May of 1972, five months after the alleged threat but prior to trial. Referring to Baker, Ed Johnson testified that the explosion took place "approximately where he said it would."

At the time of the December 1971 conversation, Ed Johnson knew his son was to be a witness in a case against Tommy Kilburn but did not know whether he had already done so. On direct examination, George Johnson testified that the conversation occurred prior to the scheduled date of the Kilburn trial but on cross-examination he was unable to place the conversation before or after the trial date. Also on cross-examination, George Johnson stated that the threat was made for picking on Kilburn and "the Glomar boys" and that was the only reason for the threat. In December of 1971 Johnson was under instruction to keep several persons from the town of Glomar Hollow under surveillance.

---

1. George Johnson, one of the arresting officers, admittedly knew at the time of the arrest and seizure of the pistol that it was Baker's pistol. Johnson had previously borrowed the pistol from Baker to use in the course of his police duties.

2. Ed Johnson continued to maintain a friendly relationship with Baker and shared Christmas dinner at Baker's house in 1971 after the alleged threat was made.

Two items of claimed error concern us. First, there is a substantial question in our view as to whether the Government produced sufficient evidence to indicate that Baker knew or was aware of the existence of a pending federal proceeding and that George Johnson was a witness therein. However, we find it unnecessary for us to resolve the point because the record reveals that there is insufficient evidence to establish beyond a reasonable doubt that the alleged threat specifically related to George Johnson's testimony in Kilburn's pending federal proceeding.

Particularly in view of the fact that 18 U.S.C. § 1503 is a criminal statute which must be strictly construed, United States v. Essex, 407 F.2d 214 (6th Cir. 1969), a threat in violation of the statute must relate to the possible testimony of the witness in a pending *federal* proceeding.[3] In testifying as to the nature of the alleged threat, Ed Johnson stated that he and Baker had several times previously discussed getting George to "turn his head" rather than arrest "Tommy Kilburn and some of his boys." The fact that George Johnson had arrested Kilburn, a resident of the area, several times in the past strongly indicates that the federal case in question was not the only conduct of George Johnson relating to Kilburn to which the alleged threat could have applied. The mere existence of that federal proceeding is not sufficient to establish or support any inference that the federal proceeding was the focus of the alleged threat.

The Government cites Broadbent v. United States, 149 F.2d 580 (10th Cir. 1945), and Odom v. United States, 116 F.2d 996 (5th Cir.), rev'd, per curiam, 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511 (1941), for the proposition that a reasonably founded belief by the accused that the person he attempts to influence is a witness in a pending federal proceeding furnishes the requisite scienter for a violation of 18 U.S.C. § 1503. Upon scrutiny, however, we find that those cases do not support the proposition so urged. In *Broadbent* the accused admitted on cross-examination that she attempted to influence the witness after she knew of the federal proceeding. And in *Odom*, the court specifically pointed out, "The accused here knew there was a proceeding in federal court, and that there was to be a hearing Saturday night . . . ." 116 F.2d at 999.

The second alleged error concerns the admission of testimony regarding the dynamite explosion. Concededly, the testimony regarding the explosion related to a matter which was not relevant to proving the crime charged. However, the Government argues that the testimony was used to corroborate the testimony of George[4] and Ed Johnson ". . . in regard to where the defendant said (at the time of the threat) the explosion would take place." Baker claims that such corroboration was unnecessary in view of the fact that these two prosecution witnesses testified that the threat was made and that he admitted the occurrence of the conversation in which the alleged threat took place. Baker's position is that his remarks were a warning of information he overheard and were not threatening.

There can be little question but that in the absence of an appropriate instruction considerable danger existed that the jury might make improper use of this evidence. Accordingly, we conclude that the District Court should have at least provided a careful cautionary charge limiting the uses the jury could make of

---

3. The statute provides in part:
   "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . ." 18 U. S.C. § 1503 (1968).

4. Our review of the record reveals that only Ed Johnson testified that Baker had specified a place where the explosion would occur.

the testimony. *See,* United States v. Gebhart, 441 F.2d 1261 (6th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 97, 30 L. Ed.2d 96 (1971).

## COUNT II

The charge under this count concerns an alleged telephone conversation between one Raleigh Riddle and defendant-appellant Baker in December of 1972. Riddle, the manager of a bar which his wife owned in Hazard, Kentucky, had been subpoenaed to appear at Kilburn's federal trial on the possession of the .44 revolver. At the trial in the case now before us, Riddle testified as the sole prosecution witness regarding Count II and stated that a person who identified himself on the telephone as "Your old buddy, Glenn" threatened to shoot him in the back of the head and blow up his bar or have it done. Riddle indicated that he recognized the voice as Baker's and further testified that Baker called approximately an hour later saying that, "Oh, I was just acting a fool, I was just kidding." Riddle claimed he replied, "This is no kidding matter. There's been enough bad shooting over there and blowing ups."

Baker denied that he had telephoned or threatened Riddle. However, Baker testified that Riddle approached him after his indictment and arrest on the charges considered herein and suggested that they might make a deal. According to Baker, Riddle stated he would swear a lie against anyone who was a friend of Kilburn but that he would swear not to lie against Baker if Baker would persuade Kilburn not to show up in an Owsley County, Kentucky, action against Riddle on a charge of shooting and wounding with intent to kill. Baker's counsel attempted to inquire into the nature of the Owsley County proceeding but the Government's objection was sustained.

In addition, Riddle admitted to the court that he was a convicted felon. However, when Baker's counsel attempted to explore the number and nature of the convictions, the District Court sustained the Government's objections thereto.

■ This Court has held that the limitations of cross-examinations must be examined within the circumstances of each case and the trial court's determinations in this regard should not be disturbed except where an abuse of discretion is shown. United States v. Marchesani, 457 F.2d 1291, 1297 (6th Cir. 1972); Lohman v. United States, 266 F.2d 3, 4 (6th Cir.), cert. denied, 361 U. S. 923, 80 S.Ct. 290, 4 L.Ed.2d 239 (1959). The Government argues that a trial judge has a wide discretion to limit an inquiry into a witness's bias and motive to falsify, particularly where that evidence is collateral. However, we cannot view as collateral the defendant's attempt to discredit the inculpatory testimony of a sole accusing witness by proof of bias or motive to falsify. United States v. Blackwood, 456 F.2d 526 (2d Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972); *see also,* Beaudine v. United States, 368 F. 2d 417 (5th Cir. 1966).[5]

■ It is well-settled that inquiry is not limited to the mere fact of a prior "felony" conviction. *See,* McCormick on Evidence, § 43 (2d ed. 1972). And, although a witness's credibility generally cannot be impeached by showing arrest, indictments or other acts of misconduct not resulting in a conviction, acts demonstrating a basis for bias and prejudice may be explored to a reasonable degree. *See,* United States v. Williams, 446 F.2d

---

5. The Government has cited United States v. Hoffa, 349 F.2d 20 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), for the proposition that the trial court has discretion to limit inquiry into collateral matters. However, this Court, after upholding a limitation of any inquiry into a collateral matter during the cross-examination of the prosecution witness Partin, was careful to point out that:

"The Court did permit cross-examination of Partin with respect to any promises or threats which would influence his testimony, and allowed a wide latitude with respect to many other matters." 349 F.2d at 46.

1115 (5th Cir. 1971); United States v. Bonanno, 430 F.2d 1060 (2d Cir.), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L. Ed.2d 384 (1970); Hughes v. United States, 427 F.2d 66 (9th Cir. 1970); Tinker v. United States, 135 U.S.App.D. C. 125, 417 F.2d 542, cert. denied, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969).

■ Whether the District Court abused its discretion in applying or misapplying these principles is a question which is reducible to another question, "What is the test?" We agree with the Second Circuit that the test is whether the jury has sufficient other information upon which it may make a discriminating appraisal of the witness's motives and bias. United States v. Blackwood, *supra*, 456 F.2d at 530. Clearly there was no such other information available to the jury here.

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.