Crockett STEVENS,
Petitioner-Appellant,

v.

Donald BORDENKIRCHER, Warden, Kentucky State Prison, et al.,
Respondents-Appellees.

No. 83–5714.

United States Court of Appeals,
Sixth Circuit.

Argued July 17, 1984.
Decided Oct. 18, 1984.

Kevin Michael McNally, argued, Asst. Public Advocate, Frankfort, Ky., for petitioner-appellant.

Steven Beshear, Atty. Gen. of Ky., Frankfort, Ky., Gerald Henry, Asst. Atty. Gen., Frankfort, Ky., argued, for respondents-appellees.

Before LIVELY, Chief Judge, ENGEL, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Petitioner Crockett Stevens appeals the denial of his petition for a writ of habeas corpus by the district court. Petitioner asserts that his Sixth Amendment right to confront witnesses against him was violated during his one day murder trial in Kentucky state court. Specifically, petitioner claims that the trial court restricted impermissibly his opportunity to cross-examine the prosecution's key witnesses. Furthermore, petitioner argues that a death certificate, which purported to identify the victim and indicate the cause of death, was admitted into evidence erroneously because the coroner who prepared the document was not called as a witness and, therefore, could not be cross-examined. The district court determined that although petitioner's cross-examination of the Commonwealth's witnesses was restricted impermissibly, any resulting error was harmless. The district court also concluded that admission

of the death certificate did not violate the Sixth Amendment's Confrontation Clause since it was admitted pursuant to a "firmly established exception to the hearsay rule." In our view, the trial court's restriction of cross-examination denied petitioner the right to confront his accusers. This denial of a constitutional guarantee cannot be construed rationally as harmless beyond a reasonable doubt. Moreover, we believe that despite the death certificate's admissibility pursuant to an exception to the hearsay rule, its admission also violated the Confrontation Clause. Accordingly, we reverse the district court's denial of the petition for a writ of habeas corpus.

Crockett Stevens and his brother, Rodney, were indicted for murder by the Harlan County, Kentucky Grand Jury in May, 1974. Petitioner's trial was delayed until the government's principal witness, Robert Lynn Bennett, was returned to Kentucky from New Mexico pursuant to a material witness subpoena. Bennett, who was charged with twelve counts of fraud, was in the custody of New Mexico law enforcement officials.

According to the testimony of witnesses at petitioner's trial, Kenneth Smith disappeared on the night of July 31, 1973. Bennett, the prosecution's principal witness, testified concerning the facts of Smith's murder as allegedly related to him by his uncle, Mac Williams, and the Stevens brothers. Bennett testified that petitioner, Rodney, and Williams met Smith at Danny Ray's Drive-In in Harlan, Kentucky. Smith was persuaded to accompany the three men to a "hollow" where they consumed alcoholic beverages. Bennett stated that "by chance" Williams took a .45 automatic from Smith, forced Smith to lie down near his car, and fired five bullets into him. The body was then concealed in the woods. Bennett testified further that shortly after Smith's death, he accompanied petitioner, Rodney, Williams, and another individual to recover and rebury the body. The men picked up the body, placed the corpse in the trunk of an automobile, and drove through the winding roads of Harlan County until they arrived at a huge mound of sawdust; the corpse was buried in the sawdust pile. Finally, Bennett disclosed that he observed bullet holes in the victim's chest.

Prior to trial, petitioner's counsel attempted unsuccessfully to obtain from the prosecuting attorney information which could have been used to impeach Bennett's testimony.[1] Without any information concerning Bennett's criminal record, the defense attempted to cross-examine Bennett, whose testimony was crucial to the Commonwealth's case. Bennett was asked to list the charges pending against him. Before the prosecution objected, Bennett had listed the charges of possession of a firearm, auto theft, and possession of marijuana. After sustaining the prosecution's objection, the trial court denied a defense request for permission to cross-examine Bennett in order to elicit evidence of bias and motive. Thus, the jury that found petitioner guilty never learned of several significant facts which would have, according to the district court, cast some doubt on Bennett's motive for testifying.

Gary Bryant, the other key witness in petitioner's trial, testified that on the night of Smith's disappearance he observed Rodney talking to an unidentified individual in a car in Cawood, Kentucky, the area from which Smith disappeared. The defense was similarly precluded from examining Bryant as to any motive or bias he may have had in testifying for the prosecution.

The other significant piece of incriminating evidence introduced at petitioner's trial was the victim's death certificate. The death certificate was introduced at trial through a witness who, according to the district court, had no knowledge of the victim's death and was not the proper custodian of the records. The district court

---

**1.** The defense was unable to obtain the county's criminal file without permission of the prosecuting attorney; this permission was apparently withheld. Furthermore, police officials in El Paso and Albuquerque would not release criminal records unless requested by the Kentucky state police.

found that "[t]he proper witness to have introduced the certificate" was the Harlan County Coroner, Dr. Begley. Although Dr. Begley had been subpoenaed and had not been released by the court from his duty to testify, the prosecutor decided, as a favor to Dr. Begley, to release him informally from the subpoena. Defense counsel objected to admission of the death certificate because the coroner's absence would deny petitioner the opportunity to cross-examine him; the judge admitted the death certificate into evidence but refused to delay trial to ensure the coroner's presence. The death certificate identified the body recovered from the sawdust pile as that of Kenneth Smith, specified that the cause of death was gunshot wounds to the thorax which were inflicted by an assailant, and noted the approximate date of death.

During the habeas corpus proceedings in 1981, the district court ordered a magistrate to conduct an evidentiary hearing. At the hearing, several significant facts which could have been elicited from Bennett at petitioner's trial, were disclosed. For example, petitioner was not permitted to demonstrate that Bennett faced charges in El Paso other than those he listed and, additionally, that Bennett asked for leniency from El Paso authorities in return for his cooperation with Kentucky officials. Furthermore, the jury was not informed that Bennett was charged with twelve counts of fraud in New Mexico only fifteen days prior to petitioner's trial and that the Commonwealth had searched for Bennett for over a year before having him returned to Kentucky pursuant to a material witness warrant. Finally, the jury never learned that Bennett was granted immunity from prosecution for Smith's murder and that Bennett was staying at the home of the Harlan County Sheriff who provided him with expenses while in Harlan for petitioner's trial. In essence, the evidence adduced at the evidentiary hearing revealed that the defense was precluded from examining Bennett concerning his motive for testifying, bias, and prejudice.

The evidentiary hearing also revealed evidence pertaining to Bryant's testimony at petitioner's trial. For example, the jury never learned that Bryant was facing a charge of auto theft in Harlan County, that his trial on this charge had been continued twice, and that at the time of petitioner's trial he was on probation for auto theft. An inmate who met Bryant in prison testified at the hearing that Bryant had perjured himself at petitioner's murder trial because the sheriff had promised him a "deal" in the pending auto theft charge in return for his testimony against the Stevens brothers. Furthermore, Bryant himself admitted lying at petitioner's trial. Bryant testified that he was threatened with a more severe sentence in his pending auto theft case if he would not testify against the Stevens brothers. In contrast, if he incriminated petitioner and Rodney, according to Bryant, he would receive a lighter sentence and be transferred to a minimum security facility. Neither the magistrate nor the district court credited Bryant's testimony.

Evidence regarding information contained in the death certificate was also elicited at the evidentiary hearing. At petitioner's trial, the death certificate purported to be a statement by the absent coroner that an autopsy revealed the identity of the body, the cause of death, and the approximate date of death. At the evidentiary hearing, however, Dr. Begley testified that when he examined the remains of the body buried in the sawdust pile, nothing was left of the corpse except fifteen pounds of bones, including a portion of the upper jaw, a few ribs, and one or more fingers. Dr. Begley indicated that he did not perform an autopsy on the remains and found no evidence of bullets or metallic fragments from an x-ray of the remains. Dr. Begley further stated that he could not determine the identity of the body, the cause of death, the date of death, whether the death occurred as a result of homicide, or whether the death resulted from one or more gunshot wounds inflicted by an alleged assailant. Moreover, the coroner disclosed that he had discussed these facts with the prosecutor

prior to trial.[2] Finally, Dr. Begley indicated that he recorded gunshot wounds as the cause of death because the police informed him that they had a witness who stated that the victim had been shot; the witness was Robert Lynn Bennett. Accordingly, the death certificate that appeared to be independent evidence corroborating Bennett's testimony was, in fact, Bennett corroborating Bennett.

The Sixth Amendment to the United States Constitution confers upon a criminal defendant the right to confront witnesses against him.[3] This guarantee includes the right to test the credibility of prosecution witnesses through cross-examination. *E.g., Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Indeed, cross-examination is itself considered to be a fundamental right possessed by criminal defendants.

There are few subjects, perhaps, upon which this Court and other courts have been more unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

*Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). *See also Phillips v. Neil,* 452 F.2d 337, 343 (6th Cir.1971) (cross-examination is essential to the "fair adjudication of criminal matters"), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972). The importance attached to the right of cross-examination is not surprising since cross-examination is considered to be the most effective method by which a defendant can test the truth of testimony given against him.

*E.g., Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). *See also Spaeth v. United States,* 232 F.2d 776, 779 (6th Cir.1956) ("In our judgment, cross-examination is generally an even more effective factor in revealing truth than is the oath of a witness.")

Despite the extreme importance accorded to cross-examination, a trial court may, in its discretion, limit its scope. *See generally Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). However, a balance must be struck between permitting a trial court to exercise its sound discretion and affording a criminal defendant the opportunity to expose bias and prejudice. Clearly, cross-examination concerning the partiality of a witness is always relevant. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *United States v. Touchstone,* 726 F.2d 1116, 1122 (6th Cir. 1984). Therefore, a trial court may not prevent a criminal defendant from exploring a witness' bias, prejudice, or motive for testifying, *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974), or curtail cross-examination concerning whether testimony is given with the expectation of immunity or out of fear or coercion, *Alford v. United States,* 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). In this regard, a criminal defendant's inquiry into the issues of motive, bias, and prejudice is not limited to establishing the "mere fact" of a witness' prior conviction, *U.S. v. Baker,* 494 F.2d 1262, 1266 (6th Cir.1974); defense counsel may also question a witness concerning *why* he is biased, *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

In determining whether a trial court has abused its discretion in allowing

---

**2.** Dr. Begley testified before the magistrate that he informed the prosecuting attorney prior to trial of his inability to determine either the identity of the body or the cause of death. In contrast, the prosecutor testified that he had no independent recollection of such a conversation with Dr. Begley.

**3.** The Sixth Amendment right to confront witnesses is applied to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

only limited cross-examination as to motive, bias, or prejudice, a reviewing court must decide "whether the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motives and bias." *United States v. Touchstone,* 726 F.2d 1116, 1123 (6th Cir.1984) (quoting *United States v. Campbell,* 426 F.2d 547, 550 (2d Cir.1970)); *United States v. Baker,* 494 F.2d 1262, 1267 (6th Cir.1974).[4] When a cross-examiner is not permitted reasonable latitude to develop facts which tend to demonstrate that the testimony in chief is biased and sufficient independent evidence of bias is not available to the jury, the court has abused its discretion. Once an appellate court concludes that a trial court's abuse of discretion has violated the Confrontation Clause, the court must then consider whether the constitutional error is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In our view, failure to permit cross-examination of a *key* government witness concerning bias, prejudice, or motive cannot be construed reasonably as harmless error.

 The unavailability of a prosecution witness poses a slightly different problem. Some traditional exceptions to the hearsay rule permit introduction of evidence even if the declarant is unavailable, usually on the theory that the evidence bears some indicia of reliability.[5] In general, the Confrontation Clause restricts introduction of this otherwise admissible hearsay by requiring the prosecuting attorney to produce the declarant or demonstrate his

unavailability. *See Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). Furthermore, even if a witness is shown to be unavailable, the Confrontation Clause requires that the hearsay evidence be trustworthy before it is admissible. *Id.* In other words, while statements made by a declarant who is unavailable might not violate the Confrontation Clause, *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *United States v. Licavoli,* 725 F.2d 1040, 1049 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984), the Sixth Amendment requires that such statements bear some indicia of reliability before their admission is constitutionally permissible. *E.g., Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Generally, introduction of hearsay evidence against a defendant in a criminal trial when the declarant is *available* constitutes a violation of the Sixth Amendment.

 Application of the aforementioned principles is not difficult. As indicated, the jury was never presented with the evidence that Bennett asked for leniency in return for his testimony against the Stevens' brothers or that Bennett was arrested for twelve counts of fraud less than three weeks prior to trial. Moreover, petitioner was not permitted to elicit from Bennett the fact that he was granted immunity from prosecution for Smith's murder. Absent this information, the jury was unable to make a discriminating appraisal of Bennett's bias and motive for testifying. Thus, we agree with the district court that the restriction of petitioner's cross-exami-

---

4. Although *Touchstone, Campbell,* and *Baker* each involve direct appeals and not collateral attack by a petition for a writ of habeas corpus, we believe that the "discriminatory appraisal" standard may be applied appropriately to both types of challenges.

5. Although application of the Confrontation Clause and the evidentiary hearsay rule may overlap, the two concepts are not of equal status. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (Stewart, J., plurality opinion); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Confrontation Clause goes beyond the hearsay rule to

ensure that prosecution witnesses testify under oath, are subject to cross-examination, and are observed first-hand by the jury. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). Accordingly, even though admission of evidence may be proper under the hearsay rule or one of its various exceptions, a court must still evaluate the evidence in light of the Confrontation Clause. *See California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970); *Phillips v. Neil,* 452 F.2d 337, 345 (6th Cir.1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972).

nation of the Commonwealth's key witness was improper. We disagree, however, with the district court's assessment that such error was harmless beyond a reasonable doubt.

The only evidence linking petitioner to Smith's death came from Bennett. His testimony was corroborated to a limited extent by Bryant and the death certificate. Clearly, Bennett's testimony was critical to the prosecution for without it the only evidence implicating petitioner was the death certificate, the testimony of witnesses who indicated that Smith disappeared on a certain evening, and the testimony of Bryant that he observed Rodney speaking to someone in a car in Cawood on the night of the victim's disappearance. In fact, Bennett's testimony was so crucial to the Commonwealth's case that petitioner's trial was delayed until Bennett was brought to Kentucky. In our view, the impermissible restriction of cross-examination of such a *key* prosecution witness cannot be construed rationally as harmless beyond a reasonable doubt.[6]

■■■ An independent violation of the Confrontation Clause arose due to admission of the death certificate. We reject the district court's conclusion that admission of the death certificate did not violate the Confrontation Clause because it was admitted under a "firmly established exception to the hearsay rule, and, therefore, its reliability may be inferred from the nature of the document itself." As we have indicated, evidence which is admissible for purposes of the hearsay rule (or an exception) must be analyzed separately to ensure that its admission does not violate the Confrontation Clause. *Phillips v. Neil,* 452 F.2d 337 (6th Cir.1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972). A hearsay statement is admissable for purposes of the Confrontation Clause only if the declarant is unavailable and the hearsay statement appears reliable. *E.g., Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *United States v. Licavoli,* 725 F.2d 1040 (6th Cir.1984). In this case, Dr. Begley was subpoenaed by the Commonwealth but the prosecuting attorney released him informally from testifying. This informal and highly improper release of an important witness did not make Dr. Begley unavailable for purposes of the Confrontation Clause. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Introduction of the death certificate in light of Dr. Begley's absence created a substantial risk that the jury would infer improperly that the information contained in the document resulted from the coroner's independent evaluation of the evidence.

The importance of the right of confrontation is exemplified in this case by the facts elicited at the evidentiary hearing held by the magistrate. The information in the death certificate was given to Dr. Begley by the sheriff who had received it from Bennett. Thus, what appeared to the jury as a document that corroborated independently Bennett's testimony as to the victim's identity, time of death, cause of death (gunshot), and type of death (murder by assailant), and thus made Bennett's testimony on direct examination appear more believable, was actually Bennett corroborating his own testimony. If petitioner had been permitted to cross-examine Dr. Begley, the jury would have learned that bones were all that remained of the body, that Dr. Begley was unable to identify the corpse, that Dr. Begley failed to find any trace of bullets or even metal fragments after x-raying the body, and that Dr. Begley had no knowledge concerning the cause of death other than information supplied to him by Bennett through the police. Ac-

---

**6.** If the testimony of Bennett was not essential to the Commonwealth's case, we might be inclined to consider any improper curtailment of cross-examination to be harmless error. In this case, however, Bennett was the only witness that linked petitioner to Smith's disappearance and murder. Proper cross-examination could have suggested to the jury that Bennett's testimony was given with the expectation of leniency or immunity and could have cast doubt on the voluntariness of his appearance at trial. While the cross-examination of Bryant was similarly restricted impermissibly, we make no determination as to whether this alone would have been sufficient to warrant a finding that the error was harmless beyond a reasonable doubt.

cordingly, we conclude that admission of the death certificate without providing petitioner with the opportunity to cross-examine Dr. Begley violated the Confrontation Clause.

The trial court permitted two independent violations of the Sixth Amendment's Confrontation Clause. First, the court restricted impermissibly petitioner's opportunity to expose the bias and prejudice of the Commonwealth's key witness. Second, the trial court admitted improperly the death certificate into evidence without ensuring that petitioner had the opportunity to cross-examine its author. In our view, the trial court's error in restricting impermissibly the petitioner's cross-examination of Bennett was compounded by the erroneous admission of the death certificate. Although this court considers each independent error to be of constitutional magnitude, the two combined constitutes an egregious violation of the petitioner's right to confront his accusers. Accordingly, the judgment of the district court is reversed and this case is remanded with instructions to issue a writ of habeas corpus unless the Commonwealth of Kentucky grants petitioner a new trial within sixty days.