822 F.2d 1089
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John DOWDY, Defendant-Appellant.
 Nos. 86-5764, 86-5968
 United States Court of Appeals, Sixth Circuit.
 July 14, 1987.
 
 Before KENNEDY, RYAN and NORRIS, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant, John Dowdy, appeals his jury conviction for mail fraud, which arose from an alleged arson for profit scheme. Dowdy contends his sixth amendment rights were violated because the district court restricted his cross-examination of the government's chief witness. Dowdy also argues there is no sufficient evidence to support the verdict. We affirm.
 
 I.
 
 2
 This case arises from a fire which occurred on April 15, 1981, and Dowdy's subsequent attempts to obtain the insurance monies therefor. One of Dowdy's businesses, the Northside Market, in Somerville, Tennessee, was in serious financial condition until it burned to the ground. Dowdy had tried to sell the business, but was never offered enough money to recoup his original investment. At one point, Dowdy told employee Terry Logan that the store would 'have to burn' in order for Dowdy to recover his original investment. After the fire, Dowdy attempted to conceal the poor financial condition of the business by telling Logan, the store manager, not to reveal the financial condition of the business to the state fire investigators.
 
 
 3
 A 'very close friend' of Dowdy named Wayne Berryman approached Bruce Avent two months before the fire, saying that Dowdy wanted his store burned due to the financial situation of the market. Berryman told Avent that Dowdy would pay $1,000 to have the store burned, and that the person who burned the store would be given a key for entry into the building.
 
 
 4
 Sometime later, Dowdy stopped by Avent's used car business and asked Avent if he knew anyone who would burn the store for him. Dowdy then told Avent: 'Well, if you don't, I've got a fellow in Somerville that will do it for me.'
 
 
 5
 Avent relayed Dowdy's and Berryman's request to Jewel Vaughan, who related the proposition to his son, James Vaughan. The two discussed how the store could be burned with as little risk to themselves as possible. The Vaughans denied setting the fire.
 
 
 6
 James Vaughan reported Dowdy's proposition, as relayed by Avent, to State Fire Investigator James Robertson. He warned Robertson that the store would probably burn in the near future. Shortly thereafter, it did.
 
 
 7
 When the firemen arrived at the scene, both the front and back doors were locked. The firemen were forced to break the front door to enter. They went to the back of the store and unlocked the back door so other fire equipment could be brought in. When Logan had closed the store on the night of the fire, he placed a bar horizontally on U-hooks across the double doors in back, to secure the building from illegally entry. When the firemen went to the back door, the metal bar was not on the U-hooks, rather it was on the floor next to the pool tables. However, the doors were locked. Evidently there were two bolt locks on the doors. Although there was a third door to the building, it was boarded up and unusable.
 
 II.
 
 8
 Shortly after the fire, Avent gave a signed statement to the state fire investigator. Avent later testified before the grand jury, and in a civil action arising from the fire, all in a manner consistent with his testimony at trial.
 
 
 9
 A year later, Avent was arrested and charged with being a member of a counterfeiting operation. His arrest took place two weeks before the criminal trial in this case. He was prosecuted for the counterfeiting charge. Defendant claims Avent testified on behalf of the government in the defendant's arson trial in order to reduce his exposure to criminal liability in the counterfeiting matter. Defendant points out, in addition, that during the investigation of the counterfeiting operation, Avent told police he travelled to Florida to purchase marijuana with counterfeit money, but was unsuccessful in doing so. Avent was never charged for this criminal attempt. Avent also had a conviction for a felony in 1976.
 
 
 10
 Dowdy attempted to cross-examine Avent concerning the counterfeiting charge and the attempted marijuana transaction in order to impeach Avent's credibility by showing he had a self-serving motive for testifying in support of the government's case in this arson prosecution. The district court refused to allow defense counsel to cross-examine Avent concerning the counterfeiting charges or the attempted marijuana purchase. Defendant claims this deprived him of his sixth amendment right of confrontation and his right to a fair trial.
 
 
 11
 After the fire, Dowdy sent a claim to the insurance company for the fire damage. On June 2, 1981, the insurance company sent a Proof of Loss form for $31,910.22 to defendant. This mailing is not the subject of the mail fraud indictment. This Proof of Loss form was then hand delivered to the insurance company by the defendant; however, defendant's attorney called the insurance company and requested they send the Proof of Loss form back so that he could correct certain items on the form. On June 8, 1981, the insurance company mailed the form to the defendant's attorney so that the attorney could correct the information on the claim form. It is this subsequent mailing that was the subject of the indictment.
 
 III.
 
 12
 In Davis v. Alaska, 415 U.S. 308 (1974), the Supreme Court reversed the defendant's conviction because the district court refused to permit the defense counsel to cross-examine a juvenile, who was the key witness for the government's case, about the witness's juvenile court record. The Court held that in limiting the cross-examination, the trial court denied the defendant his sixth amendment right to confront his accuser. See also Stevens v. Bordenkircher, 746 F.2d 342 (6th Cir. 1984).
 
 
 13
 In this case, the district court refused to permit defense counsel the opportunity to cross-examine Avent concerning Avent's arrest, two weeks prior to the trial, on counterfeiting charges. Defense counsel maintains that the cross-examination would have shown bias on Avent's part--that Avent was testifying against the defendant solely in order to curry favor with the government. Although Avent had been arrested, he had not yet been indicted. The district court stated:
 
 
 14
 'I just think there is a big risk of unfair prejudice if this man [Avent] is asked questions that suggest that he is going to color his testimony in this case because he has been arrsted in a counterfeit charge in the last two weeks, which hasn't even gone to the grand jury.'[1]
 
 
 15
 Although the scope of cross-examination is normally within the discretion of the trial judge, in Delaware v. Van Arsdall, 89 L. Ed. 2d 674 (1986), the Supreme Court held that because the trial court in that case prohibited any inquiry into the prosecution's key witness's bias as a result of the state's dismissal of pending public drunkenness charges, thus cutting off questioning about an event the state conceded took place and the jury reasonably could have found furnished the witness a motive for testifying favorably to the government, the trial court violated defendant's rights under the Confrontation Clause. See also Stevens v. Bordenkircher, 746 F.2d 342, 347-48 (6th Cir. 1984).
 
 
 16
 However, in United States v. Christian, 786 F.2d 203, 213 (6th Cir. 1986), this circuit held that although the trial court did not allow defense counsel an opportunity to cross-examine the state's witness concerning a charge brought against her, the disposition of that case, or any connection between the dismissal of that charge and the witness's cooperation in the case before the court, and where these inquiries were clearly relevant to the witness's potential bias, because the district court allowed an aggressive attack on the witness's credibility, which 'put the jury in possession of sufficient information by which to appraise the [witness's] credibility,' the limitation was not an abuse of discretion, and did not violate the defendant's sixth amendment right to effective cross-examination.
 
 
 17
 While we think it is debatable whether the trial court's ruling restricting the cross-examination of Avent was, on the facts of this case, a denial of the defendant's sixth amendment right of confrontation, we are not entirely convinced that it was.[2] We shall assume constitutional error in this case, however, without specifically finding it, because we are convinced that even if the court unconstitutionally limited the cross-examination of Avent, it was error harmless beyond a reasonable doubt.
 
 
 18
 '[T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman [v. California, 386 U.S. 18 (1967)] harmless-error analysis.' Van Arsdall, 89 L. Ed. 2d at 686. See also Harrington v. California, 395 U.S. 250 (1969). The factors to consider in determining whether error was harmless 'include the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' Van Arsdall, 89 L. Ed. 2d at 686-87.
 
 
 19
 Avent's testimony was important to the prosecution's case, and the proposed cross-examination was not cumulative. However, a great deal of testimony by other witnesses corroborated Avent's testimony on material points. In addition, Avent's testimony at trial was consistent with statements he made and testimony he gave concerning the arson, long before his arrest on the counterfeiting charge. Moreover, the prosecution's case against Dowdy was very strong.
 
 
 20
 The testimony of Logan, Dowdy's store manager, showed that the building was locked before being closed that evening; that there were only two keys to the door, one of which was in Dowdy's possession the other was in his own possession; that the business was in desperate financial shape; that Dowdy had told Logan on one occasion that in order to get his investment out of the building, the building would have to burn; that on another occasion Dowdy told him Wayne Berryman would not help the fire investigator; and finally, that Dowdy told Logan not to reveal any information to the fire investigators. The firemen testified that the building was locked when they arrived, and that they had to break in the front door in order to enter the premises.
 
 
 21
 Avent had testified under oath concerning the arson in two prior proceedings, approximately a year before his arrest on counterfeiting charges. In addition, he had given a statement to the fire investigator immediately after the fire. These three statements by Avent, given long before there was any motive to falsify his trial testimony to win favor with the government, were substantially identical to his testimony at trial. Thus, under Fed. R. Evid. 801(d)(1)(B), Avent's prior consistent statements were substantive corroboration of his testimony at trial.
 
 
 22
 Thus, under the third factor of the Van Arsdall test, there was a great deal of testimony by witnesses corroborating Avent's testimony on material points.
 
 
 23
 Defense counsel was allowed to cross-examine Avent on many other matters, including Avent's felony conviction in 1976. Thus, testified against the fourth Van Arsdall factor, the record suggests a finding of harmless error.
 
 
 24
 And the final Van Arsdall factor--the overall strength of the prosecution's case--strongly suggests that the error was harmless.
 
 
 25
 We conclude the district court's error, precluding part of the cross-examination to impeach Avent's credibility, even if constitutional error, was harmless beyond a reasonable doubt.
 
 IV.
 
 26
 Dowdy next claims the verdict cannot stand because there was insufficient evidence showing Dowdy caused something to be mailed in furtherance of the scheme to defraud.
 
 
 27
 Dowdy was convicted of mail fraud under 18 U.S.C. Sec. 1341. United States v. Castile, 795 F.2d 1273, 1277-78 (6h Cir. 1986) sets forth the elements of a conviction for mail fraud as follows:
 
 
 28
 'A conviction for mail fraud requires proof of (1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme.'
 
 
 29
 Defendant contests only the final element--that the mailing must have been for the purpose of executing the scheme to defraud.
 
 
 30
 'A determination of whether uses of the mail were 'for the purpose of executing' the fraud involves an inquiry into whether the 'mailings were sufficiently closely related to [the] scheme.' . . . In order for a mailing to be in furtherance of a scheme, the scheme's completion or prevention of its detection must have depended in some way on the charged mailing.'
 
 
 31
 Castile, 795 F.2d at 1278. See also United States v. Reynolds, 762 F.2d 489 (6th Cir. 1985). The Proof of Loss form was mailed to defendant's attorney at the attorney's request, in order to make corrections on the forms in anticipation of improving the prospects of collecting the insurance proceeds. Thus, the mailing furthered the scheme to defraud.
 
 
 32
 We affirm Dowdy's conviction because it was supported by sufficient evidence.
 
 
 
 [1]
 Under Fed. R. Evid. 403, the trial court may exclude otherwise relevant evidence if the court determines that the prejudicial effect of the proposed evidence substantially outweighs its probative value. We do not understand who would 'risk . . . unfair prejudice' were the cross-examination permitted; nor do we think such prejudice, if any, could have substantially outweighed the probative value of the evidence
 
 
 [2]
 Certainly not every trial court ruling erroneously restricting a defendant's right to cross-examine a witness against him for the purpose of demonstrating the witness's bias is necessarily error of constitutional proportions. The authorities in general, and Davis in particular, strongly suggest that whether restricting such cross-examination is constitutional error depends on the facts of the particular case. We quite agree with Justice Stewart's concurring observation in the Davis opinion:
 'I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.' Davis, 415, U.S. at 321 (Stewart, J., concurring) (emphasis added).
 We think the same might be said about a witness's past arrests and pending prosecutions. See United States v. Atisha, 804 F.2d 920, 929-30 (6th Cir. 1986), cert. denied, 107 S. Ct. 955 (1987).