Nicholas P. MANOCCHIO

v.

John MORAN, Director, Department of Corrections.

Civ. A. No. 88–0221 B.

United States District Court, D. Rhode Island.

March 15, 1989.

---

John A. MacFadyen, Providence, R.I., for petitioner.

Anne Goldberg, Asst. Atty. Gen., Providence, R.I., for defendant.

## OPINION

### FRANCIS J. BOYLE, Chief Judge.

Petitioner seeks a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 alleging that his conviction of manslaughter was obtained in violation of his right to confront the witnesses against him as guaranteed by the Sixth Amendment. Petitioner contends that the Medical Examiner's autopsy report should not have been admitted in evidence because the Medical Examiner who performed the autopsy did not testify at trial as he had since moved to Israel. He contends that his inability to cross-examine the doctor denied him his Sixth Amendment right to confrontation, and is subject to remedy under § 2254(d).

In this case, the Defendant was tried for the murder of a man who died shortly after being beaten by several men in the parking lot of a North Providence night spot. An eyewitness to the beating testified at trial, positively identifying petitioner as one of the assailants. The state introduced the autopsy report as the only evidence to establish the beating as the cause of death. Dr. Joel Zirkin, the medical examiner who had performed the autopsy, did not testify. Between the time of the autopsy and the time of trial Dr. Zirkin had left the Rhode Island Medical Examiner's Office, moved to Cleveland, Ohio and by the time of trial had moved to Israel. The state attorney general's office apparently was aware that Dr. Zirkin was moving to Israel, and in fact filed a motion to take his deposition, claiming his testimony was "critical to establish the course, cause and manner of death...." However, Dr. Zirkin, who was deposed by the state in two other pending criminal cases, was not deposed in this case before his move to Israel.

At trial, a Dr. Charles Arthur Burns testified for the limited purpose of identifying the report and outlining the procedure for its preparation. The report was admitted into evidence over persistent objection including a motion in limine, objections and a motion to strike. A copy of the report was provided to the jury for its use during deliberation. The report in part, states:

CONCLUSION:

It is our opinion that Richard Fournier, a 24 year old white male, died of multiple injuries, including mandibular and maxillary fractures, contusions and abrasions of the face, subgaleal hemorrhage and abrasions of the chest and extremities. Cerebral edema and subarachnoid hemorrhage resulted from the injuries although no cranial fractures, brain contusion, or subdural hemorrhage were seen. The decedent was beaten by assailants in a parking lot on Mineral Spring Avenue, North Providence, on November 2, 1980 at approximately 1:00 a.m. He was found with shallow respirations and a weak pulse. He was taken by Rescue to Roger Williams General Hospital where he died at 1:47 a.m.

. . . .

MANNER OF DEATH: Homicide.

Petitioner was convicted of manslaughter.

The Rhode Island Supreme Court, in its review of petitioner's conviction states that "The state introduced as evidence the autopsy report of the victim, Fournier, for the purpose of establishing the cause of his death." *State v. Manocchio*, 497 A.2d 1, 4 (R.I.1985). Petitioner claims that the admission of this report, the only direct evi-

dence showing cause of death, without the opportunity to cross-examine Dr. Zirkin before the jury, denied him his Sixth Amendment right to confrontation.

On appeal, the conviction was affirmed by the Supreme Court of Rhode Island. *State v. Manocchio*, 497 A.2d at 13. The court found that Dr. Zirkin was "unavailable" to testify for the purposes of meeting the requirements of an exception to the hearsay rule, *Id.* at 5, and that the autopsy report bore sufficient "indicia of reliability" to overcome the confrontation clause problem. *Id.* at 8:

> The trial justice concluded, after this hearing, that the "underlying trustworthiness" surrounding the generation of the autopsy report justified its admission. We conclude that the right of confrontation of defendants was not violated. This conclusion is based on the trial justice's finding that the circumstances surrounding the preparation of the autopsy report were trustworthy. We conclude that admission of the autopsy report was not error.

The Sixth Amendment provides every criminal defendant the right "to be confronted with the witnesses against him." This right is applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). While the right to cross-examine witnesses is a paramount interest protected by the confrontation clause, *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965), competing interests may dictate that it be waived in certain circumstances. *See, e.g. Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) (rules of law valuable to accused occasionally "give way to considerations of public policy and the necessities of the case"); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) ("right to confront and to cross-examine is not absolute and

may, in appropriate cases, bow to accommodate other legitimate interests").

Under the doctrine of *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), the restriction of the confrontation clause on the use of admissible hearsay is two-fold. First is the requirement that use of the hearsay be necessary, usually satisfied by the unavailability of the declarant. *Id.* Secondly, once the declarant is determined to be unavailable, the hearsay must be sufficiently trustworthy to overcome the inherent need for cross-examination. *Id.* Courts must determine on a case-by-case basis whether the hearsay statements of an unavailable declarant bear sufficient "indicia of reliability" to satisfy the requirements of the confrontation clause. *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970).[1]

The testimony admitted in this instance without an opportunity for cross examination included the conclusion that "The decedent was beaten by assailants in a parking lot on Mineral Spring Avenue, North Providence, on November 2, 1980 at approximately 1:00 A.M.—He was taken to Roger Williams General Hospital where he died at 1:47 A.M.—Manner of death: Homicide."

Defendant was charged with participation in the beating of the decedent as described in the autopsy report. Testimony was admitted from an eyewitness that Defendant was a participant. Coupled with the autopsy report and the eyewitness identification, the State proved its case. There is no direct evidence, other than the autopsy report, of the cause of death. The only other evidence of cause of death is circumstantial and totally lacking any medical basis. The fact that the victim died shortly after the beating does not create an inference which rises to the level of proof beyond a reasonable doubt that the victim's death was caused by the beating, however vicious. The State has the burden of proving the *corpus delicti* beyond a reasonable

---

**1.** The Supreme Court of Rhode Island applied the *Dutton* test and determined that both the unavailability and trustworthiness criteria were met and the admission of the autopsy report did not violate petitioner's right to confrontation. *State v. Manocchio*, 497 A.2d at 7–8.

doubt. *State v. Halstead,* 414 A.2d 1138, 1143 (R.I.1980); *State v. Maloney,* 111 R.I. 133, 138, 300 A.2d 259, 262 (1973). "In a homicide prosecution, the state must thus show that a person has died and that the death was caused by the criminal agency of another. The requirement of proving *corpus delicti* reflects a concern that an accused not be convicted when no crime has in fact been committed." *State v. Halstead,* 414 A.2d at 1143.

Voluntary manslaughter is defined as an intentional homicide without malice aforethought in the heat of passion as a result of adequate provocation. *State v. Lillibridge,* 454 A.2d 237, 240 (R.I.1982); *State v. Vargas,* 420 A.2d 809, 815 (R.I.1980). The state had the burden to prove beyond a reasonable doubt that defendant caused the victim's death. The only evidence of causation was that contained in the autopsy report. Furthermore, the evidence was hearsay information in a hearsay report which was admitted to prove the truth of the hearsay information. Such evidence has been held by the Rhode Island Supreme Court in cases decided both before and after *State v. Manocchio,* to be inadmissible hearsay. *See State v. Castore,* 435 A.2d 321, 326 (R.I.1981); *State v. Pina,* 455 A.2d 313, 315 (R.I.1983); *State v. Carrera,* 528 A.2d 331, 335–36 (R.I.1987); *State v. Lima,* 546 A.2d 770, 774 (R.I.1988). Although recent developments suggest that such information may indeed be admitted in civil actions, at least under the Federal Rules of Evidence, Rule 803(8)(C), since the medical examiner has a duty to investigate by law, R.I.Gen.Laws, § 23-4-1, *et seq., Beech Aircraft Corp. v. Rainey,* —— U.S. ——, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), admission of investigative reports in criminal cases is a different matter. *See United States v. Cepeda Penes,* 577 F.2d 754, 761 (1978); Weinstein on Evidence, ¶ 803(8)[04].[2] That the Defendant might present evidence contradicting the report is clearly beside the point in a criminal prosecution. In a criminal case the defendant has no duty to prove anything.

Whether evidence is admissible under the hearsay rule and whether the evidence satisfies the confrontational requirements of the Sixth Amendment are two different matters. The Rhode Island Supreme Court relied upon *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), and *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), for the proposition that the focus of the court's constitutional concerns is indicia of reliability in order to place before a jury a statement admitted without confrontation of the declarant. *State v. Manocchio,* 497 A.2d at 8. Indeed, this is what both cases hold. However, this is not all that *Dutton,* at least, stands for. *Dutton,* as does a long line of authority both before and after it, holds that although the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots, "this Court has never equated the two and we decline to do so now." 400 U.S. at 86, 91 S.Ct. at 218. The court then went on to say—"This case does not involve evidence in any sense 'crucial' or 'devastating,' as did all the cases just discussed." *Id.* at 87, 91 S.Ct. at 219. *Dutton* involved testimony of a witness to an out of court post conspiracy statement of a non-testifying defendant which was specifically admissible under a State of Georgia statute. The *Dutton* court described the testimony as "... of peripheral significance at most." *Id.* Besides, the court pointed out, the witness who gave the testimony could be cross-examined. *Id.* at 88, 91 S.Ct. at 219. The *Dutton* court quoted Mr. Justice Cardozo, in *Snyder v. Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934):

> There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law and set the guilty free.

400 U.S. at 89–90, 91 S.Ct. at 219–220.

This case asks the question whether proof of the *corpus delicti,* without an

---

**2.** In *State v. Manocchio,* the Rhode Island Supreme Court applied the standards of Rule 803(8)(B) and not Rule 803(8)(C). 497 A.2d at 6.

opportunity to cross-examine the only witness who testified to it is a gossamer possibility of prejudice or the denial of the right of confrontation by means of cross-examination. The answer seems to be quite obvious. This defendant was convicted on the basis of evidence which he had no opportunity to test for validity. It would seem that he should at least have had the opportunity to inquire of the medical examiner whether or not the victim could have died from some cause other than the beating. The autopsy report which went to the jury room gives no clue of the response that would be made to this question.

There is considerable authority that not every extrajudicial declaration admitted at trial violates the Sixth Amendment. Thus, the admission of the overlapping confessions of each of three defendants, with proper limiting instructions, does not violate the Sixth Amendment. *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). However, admission of the prior testimony of an eye witness not subject to effective cross-examination does violate the Sixth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965). The prior testimony of an eye witness at an earlier trial subject to cross-examination, who was in Sweden at the time of the second trial, may be admitted at the second trial even though the second trial was made necessary by the ineffective assistance of counsel at the earlier trial. *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). The opportunity to cross-examine an unavailable witness at a preliminary hearing is sufficient to permit the introduction of a transcript of the witness' preliminary hearing testimony at trial. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). This discussion demonstrates that the admissibility of hearsay statements depends at times upon subtle distinctions. In a number of cases the issue is whether the party against whom the evidence was offered had an opportunity to cross-examine the maker of the statement at the time it was made. In other circumstances the admission of a party or peripheral information is admissible without cross-examination. But no case has gone so far as to hold that proof of the *corpus delicti* can be accomplished by evidence whether or not subject to cross-examination. This would frustrate the historic purpose of the confrontation clause to prevent trial by affidavit. *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895). In *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987), the Supreme Court held that evidence admissible under a "firmly rooted hearsay exception" is evidence not barred by the confrontation clause. It was not until December of 1988 that the Supreme Court resolved the controversy concerning admissibility of opinion evidence in a hearsay document. *Beech Aircraft Corp. v. Rainey,* —— U.S. ——, 109 S.Ct. 439, 445–46, 102 L.Ed.2d 445 (1988). As the Court noted, this issue has "divided the federal courts from the beginning." *Id.* at 446. It can hardly be said to be a firmly rooted exception.

In *Stevens v. Bordenkircher,* 746 F.2d 342 (6th Cir.1984), the Court of Appeals considered circumstances similar to those in this matter. In a homicide trial a death certificate revealing the identity of the body, and the cause of death was admitted. The County Coroner was subpoenaed but was excused "as a favor" to him by the prosecuting attorney. At a later hearing the coroner testified that he recorded gunshot wounds as the cause of death because the police had told him they had a witness who said the victim had been shot. The Court of Appeals rejected the district court's conclusion that admission of the death certificate did not violate the confrontation clause because it was admitted under a firmly established exception to the hearsay rule, and, therefore, its reliability may be inferred from the nature of the document itself. 746 F.2d at 348. Although the court found that the coroner was not "unavailable," it also determined that "Introduction of the death certificate in light of Dr. Begley's absence created a substantial risk that the jury would infer improperly that the information contained in the document resulted from the coro-

ner's independent evaluation of the evidence." *Id.*

■ In this case, the portion of Dr. Zirkin's report relating to the fight in the parking lot cannot be considered medical opinion. It is a factual conclusion. The report could be and apparently was read by the jury as concluding that the decedent died as a result of the beating in the parking lot, rather than as a result of the subarachnoid hemorrhage. In his grand jury testimony Dr. Zirkin testified that the subarachnoid hemorrhage, swelling and bleeding in the tissue lining the brain, caused the death. He testified that the broken facial bones, primarily in the jaw area, would not have caused the hemorrhage and that while there was bruising to the head there were no fractures of the skull. He further testified that cocaine metabolite was found in the decedent's blood.[3]

Since petitioner was found guilty of manslaughter and since the only evidence of the *corpus delicti* was the opinion of an absent Medical Examiner, the conclusion is inescapable that the jury acted on the information and conclusions stated in the Medical Examiner's Report. This is error of constitutional dimension.

Up to this point, the assumption has been made that Dr. Zirkin was indeed unavailable. The fact of the matter is that at the time he left the United States for Israel, he was residing in the State of Ohio. He was brought to Rhode Island and the Rhode Island Attorney General took his deposition in two other criminal cases then pending. The Rhode Island Attorney General served a notice to take Dr. Zirkin's deposition before trial in this case as well. The notice alleged "3. Dr. Zirkin's testimony is critical to establish the cause and manner of death ..." "7. It is necessary to take his deposition in order to prevent a failure of justice on (sic) this matter...."

Inexplicitly, the deposition was not taken. Also inexplicable is the failure of the State of Rhode Island to bring Dr. Zirkin back from Israel for the trial. In this present day mode of foreign travel, certainly such an effort would not be unreasonable. Further, there was no effort made by the State to invoke the provisions of 28 U.S.C. § 1783, a statute which had been amended in 1964 to permit a State to obtain a subpoena from a Court of the United States of a national or resident of the United States who is in a foreign country to appear before a state court criminal proceeding. This process has been held constitutional as early as 1932 as applied to citizens. *Blackmer v. United States,* 284 U.S. 421, 431, 52 S.Ct. 252, 76 L.Ed. 375 (1932). *See Mancusi v. Stubbs,* 408 U.S. 204, 212, n. 2, 92 S.Ct. 2308, 2312, n. 2, 33 L.Ed.2d 293 (1972).

The fact of the matter is that the State made no effort to obtain Dr. Zirkin's testimony. As has been noted, the United States Supreme Court has approved the use of prior recorded testimony of a witness which had been subject to cross-examination to be admissible in spite of the fact that the witness was not present because at the time of a second trial he resided in Sweden. *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). This is a remarkably different situation, in which there was no opportunity whatsoever to cross-examine Dr. Zirkin.

■ Further, at the time of trial, the state was aware of his intended departure prior to trial and his destination. Under Rhode Island Rules, "If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court may ... upon motion of a defendant or the State ... order that his testimony be taken by deposition...." R.I.Sup.Ct.R.

---

3. In *Beech Aircraft Corp. v. Rainey,* the U.S. Supreme Court held that reports containing opinions or conclusions "are not on that account excluded from the scope of [rules of evidence]." 109 S.Ct. at 446. However, a prejudicial impression created by the admission of such a report must be available for adequate and effective cross-examination. *Id.* at 451. This rule probably does not apply in criminal cases, since such reports are generally not admissible against a defendant in any event. *See* Fed.R.Evid. 803(8)(B) and (C).

Crim.P. 15(a). Here, Dr. Zirkin's testimony was beyond material, it was crucial to the case, as it related to the cause of death. He should have been deposed by the state before he left for Israel. The prosecution had a duty to make a good faith effort to produce him at trial. *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed. 2d 255 (1968). The state's assertion that the defendant should have deposed Dr. Zirkin is without merit. A defendant is never obligated to prove his innocence; rather the state is required to prove his guilt. The state's failure to make Dr. Zirkin available is a further violation of constitutional dimension of petitioner's rights.

The fact that the report was hearsay and may have been admissible under a hearsay exception is not the issue in this case. The question is whether its admission denied petitioner the right to confront and cross-examine a material witness against him. The state in its memorandum contends that the report was merely cumulative to the "at least" 15 state witnesses who "clearly proved that the victim died in the parking lot of Gantry's as a result of a cruel and merciless beating." This misstates the facts. While it is true that at least 15 witnesses testified to the beating, only the autopsy report provided evidence of its result. In this case, "the correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). This court is unable to find this error harmless beyond a reasonable doubt.

Given the facts in this case, this Court finds that the state court's admission of Dr. Zirkin's autopsy report, without requiring his testimony in person or by deposition, deprived petitioner of the opportunity to test the doctor's findings through cross-examination. As a result, petitioner was denied a full and fair trial on a crucial matter in the case. Therefore, under 28 U.S.C. § 2254(d)(2) a writ of habeas corpus will issue unless the State of Rhode Island affords to petitioner a new trial within 120 days from the date of this Opinion.

SO ORDERED.